STATE OF NORTH CAROLINA v. CHARLES LEE SCOTT

No. 233A88

(Filed 6 October 1988)

**Rape and Allied Offenses § 5— second degree rape—evidence of force—sufficient**
>    The trial judge in a prosecution for second degree rape correctly denied the defendant's motions to dismiss where the evidence disclosed actual physical force used by the defendant to overcome the resistance of the victim in accomplishing the sexual intercourse; the facts of this case are not similar to *State v. Alston*, 310 N.C. 399.

APPEAL by the State of North Carolina pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 89 N.C. App. 680, 367 S.E. 2d 1 (1988), reversing the judgment of *Lewis (Robert D.), J.,* at the 25 March 1987 session of Superior Court, BUNCOMBE County. Heard in the Supreme Court 14 September 1988.

*Lacy H. Thornburg, Attorney General, by D. David Steinbock, Assistant Attorney General, for the state.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by David W. Dorey, Assistant Appellate Defender, for defendant.*

MARTIN, Justice.

The state appeals of right the decision of the Court of Appeals and presents to this Court the question of whether the trial court erred in denying defendant's motions to dismiss the state's

case for insufficiency of the evidence. N.C.G.S. § 15A-1227 (1983). We find no error in the trial court's rulings and reverse the Court of Appeals.

The evidence, viewed in the light most favorable to the state, showed that on 18 September 1986, the victim, who had turned sixteen less than one week before, was living with her mother and younger brother in an Asheville mobile home park. Defendant and his wife, like the victim and her family, had lived in the trailer park for about ten years, and the victim's mother was a very close friend of defendant's wife. The victim did not know the defendant well, although he had provided her family with food for about two years during the time of her mother's divorce. Although she had been involuntarily committed to a psychiatric hospital for a short time the previous May, the victim both attended school and had a job in September of 1986, when the following events transpired.

On 18 September, after her mother had gone to work, the victim sent her brother to defendant's trailer to ask defendant to loan her a couple of cigarettes. Defendant sent two cigarettes to her by the brother, and soon thereafter she telephoned defendant and asked him to bring her a pack of cigarettes if he was out that day and she would pay him for them. Defendant agreed to do so. The victim had requested and received her mother's approval of the cigarette transactions with defendant. Subsequent to these transactions the victim had a telephone conversation with defendant about a car she wanted to buy. During that conversation defendant said he wanted her to go with him the next day to look at the car and that she should not tell her mother about it so they could go alone. She declined this invitation, telling defendant that she could not go anywhere without telling her mother.

Around 10:30 that morning the victim was washing dishes at the kitchen sink when defendant entered her home without knocking. She just turned around and there he was in the room. He said that he had brought the cigarettes, which she accepted. She offered him a dollar in payment, but defendant refused it, saying that it was not necessary that she pay for them. Defendant stayed and talked for a while until she told him that she had to get back to work as she had to finish cleaning the house before she left for school. Defendant responded that the dishes could

wait, and when the victim turned around defendant had her "pinned up against the sink" with an arm on each side of her. She begged him to leave, but he did not leave and told her "it would just take a minute." Defendant began moving his hands over her body and moving his hips against her. Despite her repeated demands that he leave, defendant refused and insisted that he "just wanted to get off."

Although the victim pushed at defendant, "he wouldn't let go" and started angling her toward the back of the trailer. He continued to have her "pinned" with one arm on each side of her. She was able to avoid being maneuvered into the bedroom and fell or stumbled into the bathroom, with defendant right behind her.

In the bathroom, the victim's back was to the bathroom sink. Defendant began to fondle her and attempted to remove her blouse and pants. Defendant was able to get the victim's pants unbuttoned and put her on the bathroom sink, but she got back down. A second time she was able to avoid being positioned on the sink, but on his third effort defendant was able to keep her on the sink. Then defendant unzipped his pants and removed the victim's pants and underpants. In a final effort to avoid defendant, the victim told him that she was "on her period," whereupon defendant pulled out her tampon. Defendant tried to penetrate her vagina with his penis but was unable to do so. After defendant applied vaseline to his penis, he did penetrate her vagina, and after climaxing, pulled out of her and wiped himself with a towel. Defendant warned her not to tell her mother or his wife what he had done, zipped his pants, and left.

The victim went into the living room and saw defendant's cigarettes and a cigar that he had left. After crying for some time, she was able to call the Rape Crisis Center. Two female officers and a male officer soon arrived. The victim described to them what had happened, and the officers took the towel defendant had used into custody. The victim was then taken to the hospital to be examined, and a rape kit, including vaginal swabbing and washes, was prepared.

The manager of the trailer park testified that he had been cutting the grass that morning and saw defendant go into the victim's trailer. After defendant had left the trailer, the manager asked the victim if he could use the bathroom in her trailer. As

he entered and left the trailer, he noticed that she was crying, but she told him that he could not help her. Shortly after he left the trailer, the officers arrived.

The forensic serologist from the SBI testified that he had examined the vaginal smear, the victim's panties, and the towel defendant had used. The serologist found spermatozoa present in each of the objects tested. The sperm were consistent with defendant's blood type, group A secretor. The vaseline jar was not tested for fingerprints. Other witnesses for the state corroborated the victim's testimony.

Upon motion for nonsuit, all the evidence admitted, whether competent or incompetent, must be considered in the light most favorable to the state. *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967). The state is entitled to every reasonable inference thereon. *State v. Witherspoon*, 293 N.C. 321, 237 S.E. 2d 822 (1977). The evidence for the state considered in the light most favorable to it is deemed to be true, and inconsistencies or contradictions therein are disregarded. *State v. Price*, 280 N.C. 154, 184 S.E. 2d 866 (1971). The credibility of the witnesses and the weight to be given their testimony is exclusively a matter for the jury. *State v. Wilson*, 293 N.C. 47, 235 S.E. 2d 219 (1977). The motion for dismissal presents to the court the questions of whether there is substantial evidence of each essential element of the crime charged or of a lesser included offense and whether the defendant was the perpetrator of the crime. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. If there is such substantial evidence, the motion for dismissal should be denied. If, however, the evidence is sufficient to raise only a suspicion as to whether the offense was in fact committed or whether the accused committed the offense, the motion should be allowed. *State v. Williams*, 307 N.C. 452, 298 S.E. 2d 372 (1983).

The battleground in this case is whether there was sufficient evidence of the essential element of force to support the conviction of rape in the second degree. N.C.G.S. § 14-27.3 requires that for a conviction of rape in the second degree it must be shown that the defendant engaged in vaginal intercourse with another person by force and against the will of the other person. In the case before us, the defendant makes no contention that the evi-

dence is insufficient to show that the vaginal intercourse was against the will of the victim. Defendant insists rather that the intercourse was not accomplished by the use of force. The statutory phrase, "by force and against the will of the other person," means the same as it did at common law. *State v. Booher*, 305 N.C. 554, 290 S.E. 2d 561 (1982). The requisite force may be established either by actual physical force or by constructive force in the form of fear, fright, or coercion. *State v. Etheridge*, 319 N.C. 34, 352 S.E. 2d 673 (1987). "Physical force" means force applied to the body. Black's Law Dictionary 1032 (5th ed. 1979).

Defendant relies upon *State v. Alston*, 310 N.C. 399, 312 S.E. 2d 470 (1984). This reliance is misplaced. *Alston* does not apply to the facts in this case: (1) In *Alston* there was a prior consensual sexual history between the parties. This is not true in the instant case. (2) The victim in *Alston* had several clear opportunities to walk away and did not do so. The victim in the case before us was trapped inside a mobile home and could not escape, being subjected to a continuing sequence of physical pressure. (3) The victim in *Alston* was an adult. The victim here was a child, barely sixteen years of age. (4) From the standpoint of the victim, the defendant occupied a position of authority, both because he was a fifty-year-old man and because he was the husband of her mother's best friend. This was not true in *Alston*. (5) The victim in *Alston* walked voluntarily to the location of the rape. Here the victim was trapped in her own trailer by the defendant. (6) This victim had a recent history of psychiatric problems. The victim in *Alston* did not. Again we state, as we did in *State v. Strickland*, 318 N.C. 653, 351 S.E. 2d 281 (1987), and reaffirmed in *State v. Etheridge*, 319 N.C. 34, 352 S.E. 2d 673, that *Alston* is only of precedential value in cases factually similar to *Alston*. The facts in the instant case are not.

Here the evidence discloses actual physical force used by the defendant to overcome the resistance of the victim in accomplishing the sexual intercourse. Actual physical force is shown by the evidence in this case that (1) defendant pinned the victim against the sink in the kitchen with one of his arms on each side of her body so that she could not move away; (2) despite the victim's repeated begging that he leave, defendant continued to restrain her; (3) even though the victim pushed defendant, he would not let her go; (4) the defendant, keeping his victim pinned, angled

State v. Scott

her down the hall and into the bathroom; (5) the defendant re-peatedly placed the victim upon the bathroom sink so that he could accomplish the act of sexual intercourse, even though she was able to remove herself from the sink two times; (6) the de-fendant forcibly unbuttoned the victim's blouse and forcibly removed her pants and panties; (7) after learning that the victim was having her period and had a tampon inserted in her vagina for that purpose, defendant forcibly removed the tampon; (8) the defendant pushed his penis against the victim's vagina but was unable to achieve penetration; (9) after applying vaseline to his penis, defendant was able to insert it in the victim's vagina; (10) the defendant, by not letting go of his victim and keeping her pinned until he was successful in getting her into the bathroom, kept her within his physical power during the entire sexual episode.

In applying the rules for deciding the question of whether the evidence was sufficient to carry the state's case to the jury, we hold that the evidence was sufficient and that the trial court did not err in denying defendant's motions for dismissal. The evi-dence in this case is well within that of *State v. Strickland*, 318 N.C. 653, 351 S.E. 2d 281. In *Strickland*, the parties had no prior sexual relationship and defendant, after learning that the victim was not feeling well, refused to leave her premises, broke the latch from her screen door and forced his way into the home, grabbing her from behind and putting his hand over her mouth. He pulled her into the bedroom by her arm, pushed her on the bed, removed her panties, and had sexual relations with her. The victim did not fight with him and did not scream or holler. This Court held in *Strickland* that the above-summarized evidence was sufficient to fulfill the element of force required for rape in the second degree. *See also State v. Primes*, 275 N.C. 61, 165 S.E. 2d 225 (1969).

We hold that the trial judge was correct in denying the de-fendant's motions to dismiss and accordingly reverse the decision of the Court of Appeals.

Reversed.