STATE OF NORTH CAROLINA v. GRAYSON RILEY DAVIS

No. 8819SC439

(Filed 7 February 1989)

1. **Narcotics § 4.4— trafficking in cocaine and methadone—constructive possession—insufficiency of evidence**

    Evidence of defendant's possession of cocaine found in the bathroom of a mobile home and methadone found in the front bedroom of the mobile home was insufficient for submission to the jury of charges of trafficking in those controlled substances, although evidence of defendant's presence in the mobile home along with a bottle of prescription drugs with his name on it sitting on a table next to him may have raised a strong suspicion that defendant had control of the mobile home and was therefore in constructive possession of substances found therein, where there was no evidence that defendant owned, leased, or otherwise exercised any control over the mobile home.

2. **Narcotics § 4.4— drugs found in outbuilding—outbuilding not within curtilage of mobile home where defendant was found**

    Evidence was insufficient to show that an outbuilding in which controlled substances were found was within the curtilage of a mobile home occupied by defendant, and the evidence was thus insufficient to show constructive possession, where the State did not show the distance of the outbuilding from the mobile home or whether there was any type of enclosure surrounding the mobile home and the outbuilding, and the outbuilding was not locked and did not contain anything sufficient to show a function of convenience or comfort.

3. **Narcotics § 4.4— drugs in outbuilding—constructive possession—insufficiency of evidence**

    Evidence was insufficient to show that defendant exercised control over an outbuilding and therefore had constructive possession of drugs found there where there was no evidence as to whether the outbuilding was located on defendant's property; evidence was presented that defendant did not own the

land upon which a nearby mobile home was located; there was no evidence that defendant had ever used or been seen near the outbuilding; and evidence of footprints from the mobile home to the outbuilding, without a showing that those prints were defendant's, did not tend to show that defendant had ever used or been in the building.

Judge EAGLES dissenting.

APPEAL by defendant from *Ross (Thomas W.), Judge*. Judgment entered 10 December 1987 in Superior Court, RANDOLPH County. Heard in the Court of Appeals 1 November 1988.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Michael Rivers Morgan, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Teresa A. McHugh, for defendant-appellant.*

GREENE, Judge.

Defendant was indicted on six counts of trafficking in the controlled substances of diladuid, codeine, cocaine, methadone, morphine, and anileridine in violation of N.C.G.S. Sec. 90-95(h) (1985), and indicted on one count of possession of the controlled substance diazapam in violation of N.C.G.S. Sec. 90-95(a)(3) (1985).

The defendant pled not guilty and was found guilty by a jury on all charges. Defendant was sentenced to a life sentence and fined $500,000.00 and court costs for each of the four counts of trafficking in diladuid, trafficking in morphine, trafficking in methadone, and trafficking in anileridine. For the offense of trafficking in codeine, defendant was sentenced to a term of thirty years and fined $100,000.00 and court costs. All the life sentences and the thirty-year sentence for trafficking in codeine were to be served concurrently. For the offense of trafficking in cocaine, defendant was sentenced to a term of fifteen years, to be served at the expiration of the concurrent life sentence and the thirty-year sentence for trafficking in codeine, plus a fine of $50,000.00 and court costs. For the offense of possession of diazapam, defendant was sentenced to a term of five years to be served at the expiration of the concurrent life sentences, the codeine trafficking sentence, and the cocaine trafficking sentence. The defendant appeals.

The State's evidence at trial tended to show that on 27 February 1987, seven law enforcement officers entered a mobile home in Randolph County pursuant to a search warrant. Upon gaining entry, the officers discovered several adults seated in the living room. The defendant, Grayson Riley Davis (hereinafter "the defendant"), and his wife Patricia were two of those present. The defendant was fifty-eight years old and physically disabled to the extent of having to rely upon a walker for mobility.

When the officers entered the home one man, Vernon Lundsford, ran down a hall towards the bathroom. An officer pursued Lundsford and entered the bathroom as he flushed the toilet. The officer retrieved several plastic bags containing a white powder substance and several white large rocks by reaching his arm into the commode up to his elbow while the commode was still in the process of flushing. Lundsford was thereafter taken into custody. All the other people in the mobile home were then seated and instructed to remain seated unless the officers needed to search them individually.

The officers next searched the mobile home and the area outside. In the same bathroom where the officer had followed the fleeing man, officers found laying on the floor beside the commode a blue Crown Royal liquor bag that contained a plastic baggy with white powder, a plastic baggy with white tablets, a plastic bottle with yellow and blue capsules, a glass bottle with yellow tablets, a plastic baggy end with a white powder substance, a plastic bottle with white tablets, and a glass bottle with a white powder substance.

Charles E. Hatley, a special agent with the State Bureau of Investigation, testified that he searched the front bedroom of the mobile home and found a sales contract in a wooden box on the dresser in that bedroom. The agent further testified as follows:

Q. And do you recall whose name was on that sales contract?

A. As I recall it was Grayson Davis.

Q. And do you recall a date on that sales contract?

A. I can from my notes but not independent of my notes; the date being March 27th, 1986.

Q. Did the contract contain a description of the mobile home as to the brand and VIN number?

A. It did; yes, sir.

Q. And did you, in the course of your search, look at the mobile home itself which you were searching?

A. Yes, sir; we—yes.

Q. And did the description and the contract match the mobile home that you were searching?

A. As far as I could determine. I didn't compare any numbers on the contract with any numbers on the mobile home.

. . .

Q. Mr. Hatley, you don't know who owns the land, do you?

A. No, sir; I do not.

Q. You know Grayson Davis doesn't own that land, don't you?

A. I don't know that of my own knowledge, but I don't think that he does.

Q. Do you know who was paying the rent for the trailer space there?

A. No, sir.

Also found on the top of the dresser in the bedroom were two plastic bottles containing white tablets later identified as methadone.

In the living room, on the floor and under one of the end tables next to the chair in which defendant was sitting, officers found a brown glass bottle containing tablets. The coffee table on the right-hand side of defendant was searched and a white plastic bottle containing tablets and a brown plastic bottle containing tablets were found there. Also found on this coffee table were several plastic bottles of prescription drugs. One of the prescription bottles had a label with the defendant's name on it. The defendant himself was searched and several white tablets were recovered from his pants pockets and from between defendant's legs in the seat of his chair. Throughout the mobile home,

paraphernalia such as scales, syringes, smoking pipes, screen wire, and rolling paper were discovered and taken into custody.

The officers next searched the area outside the mobile home. James Allred, a lieutenant detective with the Randolph County Sheriff's Department testified in pertinent part as follows:

A. I went outside with another officer; there was snow on the ground, to look and see if there were any tracks leading from the trailer in any direction.

Q. What did you observe out there?

A. I found some tracks leading from the front door out by the side of the trailer up to the little yard area to an outbuilding.

Q. Did you go out to the outbuilding at that time?

A. Yes I did.

Q. Just describe the outbuilding, if you would.

A. The best I remember it was—the size of the building looked to be about twelve (12) foot wide and maybe twenty (20) foot long. It had a door, some windows that had been broken out, or maybe shutters that was [sic] open; I couldn't tell if the window was all opened, and it was just a storage building; some pieces of furniture, some other containers like buckets, maybe parts of a motor; I believe there was a motorcycle in there.

Q. Was the door locked?

A. No it was standing partly open.

Inside the outbuilding, the officers discovered a gray plastic bag and a white plastic bag containing a black cloth bag which had various bottles of liquid substance and tablets.

Chemical analysis conducted by an expert in the field of forensic chemistry employed by the State Bureau of Investigation revealed that the items which were collected and recovered at the mobile home included 28.1 grams of undiluted cocaine and 21.7 grams of a white powder substance that contained approximately thirty per cent cocaine both of which were found in the bathroom, 51.7 grams of the opiate methadone which was found in the front

bedroom, 49.2 grams of the opiate morphine, 2,055 tablets containing diazapam, 31 grams of the opiate hydromorphone whose trade name is dilaudid, 27.2 grams of the opiate codeine, and 28 grams of the opiate anileridine, all of which were found in the outbuilding.

At the end of the State's evidence, the defendant moved to dismiss all the charges, which motion was denied by the court. After the defendant offered no evidence, the defendant then renewed his motions to dismiss, which motions were again denied.

Four of the six trafficking charges refer to controlled substances found in the unlocked outbuilding. One trafficking charge refers to methadone tablets found on the dresser in the front bedroom of the mobile home. The remaining trafficking charge refers to cocaine found in the bathroom of the mobile home. This includes the cocaine Vernon Lundsford attempted to flush down the toilet as well as the second bag containing cocaine which was found on the floor beside the toilet. The charge of possession refers to the controlled substance diazapam found in the outbuilding. No charges were brought against the defendant relating to the tablets found in the pockets of defendant's pants or his chair. Likewise, no charges were brought against the defendant relating to the paraphernalia recovered throughout the mobile home.

The issues presented for review are whether the trial court I) erred in denying defendant's motion to dismiss the charges of trafficking in cocaine (controlled substance found in the bathroom of the mobile home) and trafficking in methadone (controlled substance found in the front bedroom of the mobile home); and II) erred in denying defendant's motion to dismiss the trafficking and possession charges which related to the controlled substances seized in the outbuilding.

I

[1] A conviction for "trafficking in cocaine" requires the sale, manufacture, delivery, transportation, or possession of twenty-eight grams or more of the substance. N.C.G.S. Sec. 90-95(h)(3) (1985). The State relies on the defendant's constructive "possession" of cocaine found in the bathroom of the mobile home to

charge him with this offense. Defendant argues in his brief that the evidence at trial failed to show he was trafficking in cocaine, more specifically that all the evidence tended to show the cocaine at issue was not in his actual or constructive possession but instead was in the actual physical possession of another person, Vernon Lundsford, who ran to the bathroom of the mobile home upon the officers' entry.

"The doctrine of constructive possession applies when a person lacking actual physical possession nevertheless has the intent and capability to maintain control and dominion over a controlled substance." *State v. Baize*, 71 N.C. App. 521, 529, 323 S.E. 2d 36, 41 (1984), *disc. rev. denied*, 313 N.C. 174, 326 S.E. 2d 34 (1985). The requirements of intent and capability "necessarily imply that a defendant must be aware of the presence of an illegal drug if he is to be convicted of possessing it." *State v. Davis*, 20 N.C. App. 191, 192, 201 S.E. 2d 61, 62 (1973), *cert. denied*, 284 N.C. 618, 202 S.E. 2d 274 (1974). However, a "defendant's knowledge can be inferred from the circumstances." *State v. Casey*, 59 N.C. App. 99, 117, 296 S.E. 2d 473, 484 (1982). Where controlled substances are found on premises under the defendant's exclusive control, this fact alone may be sufficient to give rise to an inference of constructive possession and take the case to the jury. *State v. McLaurin*, 320 N.C. 143, 146, 357 S.E. 2d 636, 638 (1987). Where possession of the premises by the defendant is nonexclusive, "constructive possession . . . may not be inferred without other incriminating circumstances." *State v. Brown*, 310 N.C. 563, 569, 313 S.E. 2d 585, 589 (1984).

In ruling on a motion to dismiss, all the evidence admitted must be considered in the light most favorable to the State with inconsistencies and contradictions therein disregarded. *State v. Scott*, 323 N.C. 350, 353, 372 S.E. 2d 572, 575 (1988). In order to survive a motion to dismiss, there must be "substantial evidence of each essential element of the crime charged." *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Considering the evidence in the light most favorable to the State, there is no substantial evidence the mobile home was under the exclusive or nonexclusive control of the defendant. First, there is no evidence of ownership of the mobile home. The evi-

dence of a sales contract matching the general description of the mobile home in issue, which did not reveal whether defendant was a buyer or seller, is not sufficient to carry the issue of ownership to the jury. Furthermore, there is no evidence defendant leased the premises or otherwise exercised any control over the mobile home. *See State v. Leonard*, 87 N.C. App. 448, 456, 361 S.E. 2d 397, 402 (1987), *disc. rev. denied*, 321 N.C. 746, 366 S.E. 2d 867 (1988) (sufficient control shown in the absence of evidence of ownership or leasehold interest where defendant first granted and later denied permission to search the premises, ordered officers off the premises and locked the door); *State v. Rich*, 87 N.C. App. 380, 382, 361 S.E. 2d 321, 323 (1987) (sufficient control shown where defendant was seen on the premises the evening before the search, seen cooking dinner on the premises on the night of the search, mail was found on the premises addressed to the defendant and insurance policy listing the premises in question as the defendant's residence was also found on the premises); *State v. Allen*, 279 N.C. 406, 412, 183 S.E. 2d 680, 684 (1971) (sufficient control shown where utilities at the residence were in defendant's name, personal papers including an army identification card bearing defendant's name were found on the premises and evidence that drugs belonged to defendant and were being sold at defendant's direction); *Brown*, 310 N.C. at 569-70, 313 S.E. 2d at 589 (sufficient control shown where defendant had on his person a key to the residence being searched and on every occasion the police observed the defendant prior to the date of the search, defendant was at the residence in question).

While the presence of the defendant in the mobile home along with a bottle of prescription drugs with his name on the bottle sitting on the table next to him may be sufficient to raise a strong suspicion that the defendant is the perpetrator of the crime charged, that strong suspicion is not substantial evidence. *McLaurin*, 320 N.C. at 147, 357 S.E. 2d at 638. Accordingly, it was error not to grant the defendant's motion to dismiss the trafficking in cocaine charge relating to the controlled substances found in the bathroom of the mobile home and the trafficking in methadone charge relating to the controlled substance found in the front bedroom of the mobile home.

II

Defendant next argues the trial court erred in denying his motion to dismiss the trafficking and possession charges related to the controlled substances seized in the outbuilding because there was no evidence that he was in possession of the drugs.

[2] If the outbuilding was within the curtilage of the mobile home and if the mobile home was under the control of the defendant, an inference of knowledge and possession of the drugs in the outbuilding would be created and would be sufficient to carry the case to the jury. *See State v. Courtright*, 60 N.C. App. 247, 251, 298 S.E. 2d 740, 743, *disc. rev. denied*, 308 N.C. 192, 302 S.E. 2d 245 (1983) (car parked within the curtilage of home which was under defendant's control gives inference of possession of narcotics found in car and may be sufficient to carry the case to the jury). The State did not present any evidence that the outbuilding was located within the curtilage of the mobile home. The question of curtilage is to be resolved with reference to four factors:

(1) the proximity of the area claimed as curtilage to the home;

(2) whether the area is included within an enclosure surrounding the home;

(3) the nature of the uses to which the area is put; and

(4) the steps taken by the resident to protect the area from observation by people passing by.

*State v. Washington*, 86 N.C. App. 235, 240, 357 S.E. 2d 419, 423-24 (1987), *cert. denied*, 322 N.C. 485, 370 S.E. 2d 235 (1988). From the evidence presented by the State, we are unable to determine the distance of the outbuilding from the mobile home or whether there was any type of enclosure surrounding the mobile home and the outbuilding. The outbuilding was not locked and did not contain anything sufficient to show a function of convenience and comfort. *Cf. State v. Fields*, 315 N.C. 191, 194-96, 337 S.E. 2d 518, 520-21 (1985) (tools, garden equipment, freezer and nonperishable food items in an outbuilding are insufficient to show function of comfort and convenience which is necessary to show building within curtilage). Furthermore, we have determined there is insufficient evidence that the defendant exercised control and dominion over the mobile home.

State v. Davis

[3] Nonetheless, the State can prevail on these charges, independent of the charges related to the drugs located in the mobile home, if it can show constructive possession of the drugs in the outbuilding.

The State argues the defendant exercised control over the outbuilding and therefore had constructive possession of the drugs found there. As previously stated, where controlled substances are found on premises under the defendant's exclusive control, this fact alone may be sufficient to give rise to an inference of constructive possession and take the case to the jury. *McLaurin*, 320 N.C. at 146, 357 S.E. 2d at 638. Where possession of the premises by the defendant is nonexclusive, "constructive possession . . . may not be inferred without other incriminating circumstances. *Brown*, 310 N.C. at 569, 313 S.E. 2d at 589. The defendant maintains there is no evidence he exercised any control, exclusive or nonexclusive, over the outbuilding or its contents. We agree.

There was no evidence concerning whether the outbuilding was located on defendant's property. Evidence was presented, however, that defendant did not own the land upon which the mobile home was located. *See State v. Wiggins*, 33 N.C. App. 291, 293, 235 S.E. 2d 265, 267, *cert. denied*, 293 N.C. 592, 241 S.E. 2d 513 (1977) (constructive possession of marijuana not found where no evidence was presented concerning whether flower bed and cornfield in which marijuana was located were on defendant's property or otherwise under his control). Likewise, there was not any evidence that defendant had ever used or been seen near the outbuilding. *Cf. State v. Spencer*, 281 N.C. 121, 129-30, 187 S.E. 2d 779, 784 (1972) (marijuana found in pig shed 20 yards from defendant's residence; court deemed it significant defendant had been seen in the outbuilding which was near home on numerous occasions).

Although the State presented evidence of footprints between the mobile home and the outbuilding, such evidence does not in any way incriminate the defendant. There was evidence tending to show defendant was so severely handicapped that he would almost certainly have been unable to get to the outbuilding on his own. Defendant required the assistance of his walker simply to stand to be searched. On the day the search took place, snow and

ice covered the ground making walking treacherous. Several officers slipped while investigating outside and once he was arrested, police had to carry defendant from the mobile home to the police car. Therefore, the presence of footprints in the snow, without evidence of walker prints, does not tend to show that defendant had ever used or been in the outbuilding.

To withstand a motion to dismiss, "there must be substantial evidence of all material elements of the offense charged." *Wiggins*, 33 N.C. App. at 294, 235 S.E. 2d at 268. When the evidence is considered in the light most favorable to the State, no evidence was presented to show that the outbuilding was under *defendant's* control. *See Scott*, 323 N.C. at 353, 372 S.E. 2d at 575 (a motion to dismiss in a criminal case requires consideration of the evidence in the light most favorable to the State). If evidence is sufficient only to raise suspicion of conjecture as to identity of defendant as perpetrator of offense, motion to dismiss should be allowed. *McLaurin*, 320 N.C. at 147, 357 S.E. 2d at 638. Accordingly, we conclude the trial judge should have granted defendant's motion to dismiss the charges relating to the drugs found in the outbuilding.

### III

Therefore all of defendant's convictions and sentences are

Reversed.

Judge BECTON concurs.

Judge EAGLES dissents in part.

Judge EAGLES dissenting.

I respectfully dissent from the portion of the opinion which reverses the convictions on the trafficking in methadone charge based on methadone found in the dresser in the front bedroom of defendant's mobile home and the trafficking in cocaine charge arising out of the cocaine seized in the mobile home's bathroom.

The majority states correctly the law regarding constructive possession and that it can be shown from circumstantial evidence. Likewise the law is clear that exclusive control of the premises

where the drugs are found is sufficient to take the case to the jury. *State v. McLaurin*, 320 N.C. 143, 357 S.E. 2d 636 (1987). Even where possession of the premises is non-exclusive, constructive possession may be shown by incriminating circumstantial evidence. *State v. Brown*, 310 N.C. 563, 313 S.E. 2d 585 (1984).

Here the majority errs by disregarding the cumulative effect of a number of discrete pieces of circumstantial evidence and by dwelling on the shortcomings of the evidence. Admittedly, the showing of constructive possession could have been stronger if more explicit indicia had been introduced. Here, however, we are examining the adequacy of the evidence to show constructive possession of the mobile home premises and the substantial quantities of controlled substances therein. Our function does not include weighing the evidence or assessing its persuasiveness, but rather determining whether the State has presented substantial evidence of each element of the offenses charged. *McLaurin* at 146, 357 S.E. 2d at 638.

Indicating defendant's constructive possession of the controlled substances seized in the mobile home, there is evidence in the record tending to show the following:

(1) This evidence was discovered in a search pursuant to a search warrant. The basis urged in the motion to suppress did not challenge defendant's ownership or control of the mobile home but was focused on the illegal hearsay nature of the supporting data from law enforcement informants.

(2) On the day the search warrant was served there was snow on the ground outside rendering the areas outside slippery, to the extent that at least one officer fell while walking around outside.

(3) Defendant, who is physically crippled and not able to walk without the use of a walker, was present and seated in the living room in the mobile home with his wife and several others.

(4) There were no walker tracks in the snow.

These facts would support the logical inference that on a cold, snowy, slippery day in February the defendant, who had difficulty in walking, was prudently staying *at home* out of the inclement weather.

In addition, there was evidence tending to support defendant's ownership of the mobile home, i.e., though the bill of sale itself is not in this record, there is evidence that a bill of sale for the mobile home bearing defendant's name was found in a wooden box in a dresser drawer in the front bedroom of the mobile home.

Further supporting the defendant's ownership and permanent residence in the mobile home is evidence that while the defendant had in his pockets a number of loose white pills, there was a prescription pill bottle bearing defendant's name on a table in the living room of the mobile home.

From this circumstantial evidence, I would hold that exclusive possession and control of the mobile home could be found by a jury. For this reason I dissent and vote to find no error in the two charges 87CRS2796 and 87CRS2797.

As to the charges relating to controlled substances found in an unsecured outbuilding of indeterminate distance from defendant's mobile home and on land not owned by defendant, I agree with the majority that the evidence establishing constructive possession by the defendant is too tenuous to submit to the jury and should be reversed.