STATE OF NORTH CAROLINA v. JOHNNY RAY MOONEYHAN

No. 907SC1101

(Filed 5 November 1991)

**Automobiles and Other Vehicles §§ 790, 848 (NCI4th)— driving while impaired—second degree murder—evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss charges of second degree murder, driving while impaired, and driving while his license was revoked arising from an accident where defendant contended that the State failed to prove that defendant was driving the motor vehicle when the accident occurred, but the State's evidence tended to show that defendant drove his truck to a nightclub around 5:30 p.m.; a witness estimated that defendant drank three beers in the hour and a half he was at the club; defendant then drove to the Moose Lodge and had dinner, drinking approximately four more beers over about three hours; a witness saw defendant preparing to leave at around 10:00 p.m. and

STATE v. MOONEYHAN

[104 N.C. App. 477 (1991)]

warned him not to drive home because of the weather and his alcohol consumption; defendant left the lodge by himself; defendant was involved soon after in the accident, which resulted in the death of a sheriff's deputy; another deputy, who was at the scene when it occurred, testified that defendant was the only one in defendant's truck immediately following the collision; the passenger door of the truck was closed when the deputy approached and the driver's door was jammed and could not be opened; the deputy testified that he did not see anyone outside of any of the vehicles involved at the time; and other witnesses who appeared on the scene later testified that only those persons mentioned above who were involved in the accident were present at the scene.

**Am Jur 2d, Automobiles and Highway Traffic §§ 383, 384.**

APPEAL by defendant from *Fountain (George M.), Judge.* Judgments entered 15 August 1990 in Superior Court, NASH County. Heard in the Court of Appeals 7 October 1991.

Defendant was charged in proper bills of indictment with second degree murder in violation of G.S. 14-17, with driving while impaired in violation of G.S. 138.1, and with driving while license revoked in violation of G.S. 20-28. The State's evidence tends to show the following: On the evening of 25 January 1990, a witness, Johnny Leonard, saw defendant drive up to a private nightclub alone in his red and white pickup truck. The owner of the nightclub saw defendant at the nightclub around 5:30 p.m., and estimated that in the hour and a half that defendant was in the nightclub that defendant consumed three or four beers.

Afterwards, a group of men, including defendant, left the nightclub and went approximately one mile down the road to the Tarboro Moose Lodge for dinner. Mr. Leonard saw defendant at the Moose Lodge around 7:30 p.m., and estimates that defendant consumed four more beers while having dinner. Leonard also saw defendant at about 10:00 p.m. standing by the door of the lodge preparing to leave. Leonard asked defendant to eat something before he left since he had seen defendant drink at least eight beers that night and thought that was too much to allow the defendant to drive. Leonard offered to call defendant a cab or get him something to eat, and warned defendant that it was raining heavily and that

STATE v. MOONEYHAN

[104 N.C. App. 477 (1991)]

it was a bad night for anyone to be out driving. Defendant declined Leonard's offer and left the lodge.

At approximately 10:30 p.m., Deputy Jack Sewell was following a car driven by Nola Hines Jackson on Highway 64 Alternate. Jackson testified at trial that she was on a straight stretch of road and saw a truck coming toward her in her lane of travel. She stated that she flashed her high beam headlights at the truck, but that it stayed in her lane. Jackson testified that she jerked her car onto the shoulder of the highway, and saw a red and white pickup truck go by her moving fast in the wrong lane of travel. Jackson stated she then heard an explosion.

Deputy Sewell testified that he was driving on a straight stretch of Highway 64 Alternate, with Deputy Tom Cone following 300 to 400 feet behind him in his patrol car, when he noticed Jackson's car in front of him veer sharply to the right in a fast, jerking motion. Deputy Sewell stated that he slowed his vehicle and began to pull onto the shoulder of the highway and saw a pickup truck coming toward him in the wrong lane of travel. Sewell pulled his car completely onto the shoulder of the highway and had almost come to a complete stop when the pickup truck hit the left front of his patrol car and careened off the left side. Sewell testified that a loud noise followed. Sewell notified the Tarboro dispatcher that he had been involved in a collision at 10:45 p.m.

Deputy Sewell further testified that after reporting the accident he ran to the rear of his car where he saw Deputy Cone's patrol car with heavy damage to its front end, and behind it the red and white pickup truck had come to a stop on top of another vehicle. He stated that he did not see anyone outside of either vehicle at the time. Sewell observed Cone lying on the broken seat of his patrol car, at which point a fire started in the engine of Cone's car. Sewell ran back to his vehicle, got his fire extinguisher and put out the fire. He then tried and failed to find Deputy Cone's pulse. At this point, Sewell estimates that one minute had passed since he had first exited his vehicle. During that time, Sewell testified that he had not seen anyone outside of the vehicles behind him.

Sewell then looked under the truck at the Buick operated by Deborah Rose. Rose stated that she was all right, but had suffered a gash to her forehead. Sewell then looked in the pickup truck, and stated that the driver's door was up in the air and that the passenger door was angled down closer to the surface

of the road. When Sewell looked inside the truck he saw defendant with his feet under the steering wheel and his upper body and head towards the passenger side of the truck. Sewell opened the passenger door and defendant slid out. Sewell testified that he helped defendant to stand and asked him for his driver's license. Sewell stated that defendant responded: "I don't have no fucking driver's license. My fucking license are revoked." Sewell said that defendant did not appear to be injured, but that he had a strong odor of alcohol on his breath, his speech was slurred, his eyes were glassy and red, and he was very unsteady on his feet. Sewell placed defendant under arrest, and as he turned him around to handcuff him defendant asked "Did you get the black-headed girl that was driving the car?"

Trooper Keith Stone transported defendant to the breathalyzer room at the Highway Patrol Station. In a taped conversation, defendant told Stone that there were three people in his truck before the collision. Defendant also stated he was not driving the truck and did not know on what street the collision occurred. Defendant was advised of his chemical analysis rights, and refused to be tested. Stone testified that at that time, his opinion was that the effect of alcohol on defendant's physical and mental faculties was extreme.

The jury found defendant guilty of second degree murder, driving while license revoked, and driving while impaired. Judge Fountain found no mitigating factors, but found as aggravating factors that defendant had a prior conviction or convictions for criminal offenses punishable by more than 60 days confinement, had a prior conviction involving impaired driving within seven years of the date of this offense, drove at the time of the current offense while his license was revoked for impaired driving, and caused by his impaired driving at the time of the current offense serious injury to another person. From judgments on the verdicts, defendant appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Linda Anne Morris, for the State.*

*Farris & Farris, P.A., by Robert A. Farris, Jr., and Thomas J. Farris, for defendant, appellant.*

STATE v. MOONEYHAN

[104 N.C. App. 477 (1991)]

HEDRICK, Chief Judge.

Defendant's first assignment of error is that the trial court erred by denying defendant's motion to dismiss at the close of all evidence because the evidence was insufficient as a matter of law to support all the elements necessary for a conviction. Defendant argues that the State failed to prove that he was driving the motor vehicle when the accident occurred.

In ruling on a motion to dismiss for insufficiency of evidence in a criminal case, all evidence admitted, whether competent or incompetent, must be considered in the light most favorable to the State. The State is entitled to every reasonable inference therefrom, and inconsistencies or contradictions are disregarded. The credibility of the witnesses and the weight to be given their testimony is exclusively a matter for the jury. *State v. Scott*, 323 N.C. 350, 372 S.E.2d 572 (1988). The motion for dismissal presents to the court the questions of whether there is substantial evidence of each essential element of the crime charged or of a lesser included offense, and whether the defendant was the perpetrator of the offense. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. If there is such substantial evidence, the motion for dismissal should be denied. *State v. Williams*, 307 N.C. 452, 298 S.E.2d 372 (1983).

In this case, evidence by the State tended to show that on the evening of 25 January 1990, defendant drove his red and white pickup truck to a nightclub around 5:30 p.m. A witness at the club estimates that defendant drank three beers in the hour and a half that he was at the club. Defendant then drove his truck approximately one mile to the Tarboro Moose Lodge, where he had dinner, and drank approximately four more beers over the course of about three hours. At around 10:00 p.m., a witness saw defendant preparing to leave the lodge, and warned him not to drive home because of the weather and his consumption of alcohol during the evening. Defendant told the witness: "I can make it. I am leaving." The witness further testified that defendant then left the lodge by himself.

Shortly after defendant left the lodge, his truck was involved in the accident which resulted in the death of Deputy Cone. Deputy Sewell, who was at the scene of the accident when it occurred, testified that defendant was the only one in the red and white pickup truck immediately following the collision, that the passenger

door of the truck was closed when he approached, and that the driver's door was jammed and could not be opened. Sewell testified that he did not see anyone outside of any of the vehicles involved at the time. Other witnesses who later appeared on the scene testified that only those persons mentioned above who were involved in the collision were present at the scene of the accident.

When this evidence is viewed in the light most favorable to the State, the testimony of the witnesses constitutes substantial evidence that defendant was the perpetrator of the offense, in that a reasonable mind might accept this evidence as adequate to support that conclusion. We hold the trial court properly denied defendant's motion to dismiss for insufficiency of evidence to show he was the driver of the pickup truck.

Defendant's final two arguments are that the judgment should be arrested because the indictment 90CRS8259 fails to charge an offense because "nowhere in this indictment is the defendant informed of the time and place of the alleged offense," and that the trial court committed plain error in its charge to the jury "by failing to submit the lesser included offenses to the jury and by misstating the law of the case and particularly North Carolina Pattern Jury Instructions 206.32." We find after careful review of defendant's contentions that both of these arguments are meritless.

We hold defendant had a fair trial free from prejudicial error.

No error.

Judges EAGLES and GREENE concur.