TYSON, Judge.
 

 *725
 
 Juharold Zaedward Vann ("Defendant") appeals from judgment entered, following his jury's conviction of assault with a deadly weapon with intent to kill inflicting serious injury. We find no error.
 

 I. Factual Background
 

 The State's evidence tended to show on 11 August 2014, Mahmoud Albdoor ("Albdoor") was working at his convenience store, "Southside Mart," with his nephew, Jamil Swedat ("Swedat"). Shortly after 1:00 p.m., Defendant entered the Southside Mart and attempted to buy a cigar wrapper from Swedat, who stood at the cash register. Defendant did not have enough money to purchase the product, and Swedat refused to sell him the wrapper. Defendant became upset and began arguing with Swedat. After a brief argument with Swedat, Defendant knocked over a Slim Jim dehydrated jerky stick display on the counter, ran out of the store, and turned right upon exiting.
 

 Albdoor testified he was also standing behind the counter, approximately five to six feet away from Defendant, and observed his entire altercation with Swedat. Albdoor identified Defendant as the person who had argued with Swedat on 11 August 2014. Defendant admitted to police officers he had engaged in a verbal altercation with Swedat and had knocked over a Slim Jim counter display at the Southside Mart.
 

 Approximately one hour later, a man entered the Southside Mart with an orange shirt covering his face and fired four to five shots from a black handgun at Swedat, with one bullet striking him in the right side. Albdoor testified after the shooting stopped, he looked up from behind the counter and observed the side of the shooter's face as he fled from the store. Albdoor testified the shooter ran towards the right upon exiting the Southside Mart, just as Defendant had done earlier that day. Albdoor also identified Defendant as the shooter.
 

 *284
 
 Swedat gave a written statement to Charlotte-Mecklenburg Police Officer Quentin Blakeney on 11 August 2014 and identified Defendant as the individual who had shot him earlier that day. A redacted version of this statement was read to the jury. Because Defendant had gained
 
 *726
 
 weight, wore glasses, and "dressed nice" at trial, Swedat initially did not recognize Defendant in court. Swedat identified Defendant as the shooter on the second day of his testimony.
 

 Charlotte-Mecklenburg Police Officer Timothy Kiefer testified on 17 August 2014, he responded to a call for service at 3463 Markland Drive in Charlotte, which was located approximately two hundred yards from the Southside Mart. Upon arrival, Officer Kiefer spoke with a resident of that address who had found a 9 millimeter handgun wrapped in a black and white striped Polo shirt and an orange T-shirt behind his trash cans. At trial, Kelly Shea, a DNA analyst with the Charlotte-Mecklenburg crime laboratory, testified that she was unable to obtain any useable DNA from either the pistol or the shirts.
 

 Todd Nordhoff, a Charlotte-Mecklenburg crime laboratory firearm and toolmark examiner, was admitted as an expert in firearms and toolmark identification. Nordhoff testified the pistol recovered by Officer Kiefer was a Star semi-automatic pistol chambered for 9 millimeter Luger ammunition. Nordhoff further testified the four discharged shell cases recovered at the scene had been fired by that pistol.
 

 Defendant testified at trial and admitted to arguing with Swedat and knocking over the Slim Jim counter display at the Southside Mart. Defendant denied being the gunman and testified that after the verbal altercation he went to his grandfather's house at 2921 Markland Drive, which was located approximately ten minutes away from the Southside Mart. Defendant testified he asked his grandfather for a ride to Lexington, North Carolina, where Defendant had a job the next day. Fifteen minutes after arriving at his grandfather's house, his grandfather took Defendant to a Wendy's restaurant located approximately ten minutes away and then drove Defendant to Lexington.
 

 The State sought to introduce, over Defendant's objections, portions of a telephone conversation purportedly between Defendant and his grandmother recorded from the Mecklenburg County Jail on 1 September 2014. The trial court conferred with counsel and announced that it would sustain Defendant's objections to certain portions of the telephone conversation.
 

 A portion of the conversation allowed into evidence by the trial court included Defendant's grandmother questioning him over whether the police had really found the gun or were merely just saying they had. Defendant argued to her the police officers must have the gun, because the gun had been found with the orange shirt and Polo shirt. Defendant added there was no way the police would have known the shirts were with the gun, unless the police had actually found them.
 

 *727
 
 Three days after the shooting, Defendant was arrested for assault with a deadly weapon with intent to kill inflicting serious injury and was subsequently indicted on the same charge on 2 September 2014. Defendant entered a plea of not guilty. On 24 February 2017, the jury returned a verdict of guilty of one count of assault with a deadly weapon with intent to kill inflicting serious injury. Defendant was sentenced in the presumptive range to a minimum of 70 months and a maximum of 96 months imprisonment, with 512 days of credit for pre-sentence confinement.
 

 Defendant gave notice of appeal in open court.
 

 II. Jurisdiction
 

 Jurisdiction of right lies in this Court by timely appeal from final judgment entered by the superior court, following a jury's verdict pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2017) and N.C. Gen. Stat. § 15A-1444(a) (2017).
 

 III. Issues
 

 Defendant asserts the trial court erred by (1) not requiring the State to file a suppression motion regarding Dr. Lori R. Van Wallendael's ("Dr. Van Wallendael") testimony; (2) partially sustaining the State's objection to Dr. Van Wallendael's testimony regarding
 
 *285
 
 the factors affecting the reliability of eyewitness identification; and, (3) excluding portions of Defendant's 1 September 2014 telephone conversation.
 

 IV. Suppression Motion
 

 Defendant argues the trial court erred by failing to require the State to "file a written pre-trial motion to suppress or motion
 
 in limine
 
 , pursuant to [
 
 N.C. Gen. Stat. § 15-977
 
 .]" Defendant did not raise this argument at trial and has failed to preserve this argument for review on appeal.
 

 Our Supreme Court has long held that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts.... The defendant may not change his position from that taken at trial to obtain a steadier mount on appeal.
 

 State v. Holliman
 
 ,
 
 155 N.C. App. 120
 
 , 123,
 
 573 S.E.2d 682
 
 , 685 (2002) (quotations omitted);
 
 see
 

 State v. Monk
 
 ,
 
 132 N.C. App. 248
 
 , 254,
 
 511 S.E.2d 332
 
 , 336,
 
 disc. review denied
 
 ,
 
 350 N.C. 845
 
 ,
 
 539 S.E.2d 1
 
 (1999) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating
 
 *728
 
 the
 
 specific grounds
 
 for the ruling the party desired the court to make if the specific grounds were not apparent from the context." (citation omitted) ). Defendant failed to raise this argument at trial and cannot assert this argument for the first time on appeal. This assignment of error is dismissed.
 

 V. Exclusion of Expert Witness Testimony
 

 Defendant argues the trial court erred by partially sustaining the State's objection to expert testimony by a UNC-Charlotte professor, Dr. Lori Van Wallendael, regarding the factors affecting the reliability of eyewitness identification.
 

 A. Standard of Review
 

 "This court has held that the admission of expert testimony regarding memory factors is within the trial court's discretion, and the appellate court will not intervene where the trial court properly appraises probative and prejudicial value of the evidence under Rule 403 of the Rules of Evidence."
 
 State v. Cotton
 
 ,
 
 99 N.C. App. 615
 
 , 621,
 
 394 S.E.2d 456
 
 , 459 (1990) (citing
 
 State v. Knox
 
 ,
 
 78 N.C. App. 493
 
 , 495-96,
 
 337 S.E.2d 154
 
 , 156 (1985) ). The Court in
 
 Knox
 
 stated the following standard for determining the admissibility of such testimony:
 

 Expert testimony is properly admissible when it "can assist the jury to draw certain inferences from facts because the expert is better qualified." The test for admissibility is whether the jury can receive "appreciable help" from the expert witness. Applying this test requires balancing the probative value of the testimony against its potential for prejudice, confusion, or undue delay.
 
 See
 
 N.C. Gen. Stat. 8C-1, Rule 403. Even relevant evidence may be excluded if its probative value is outweighed by the danger that it will confuse or mislead the jury. The court "is afforded wide latitude of discretion when making a determination about the admissibility of expert testimony."
 

 Knox
 
 ,
 
 78 N.C. App. at 495
 
 ,
 
 337 S.E.2d at 156
 
 (citations omitted).
 

 This Court has also noted, "expert testimony on the credibility of a witness is inadmissible[.]"
 
 State v. Davis
 
 ,
 
 106 N.C. App. 596
 
 , 602,
 
 418 S.E.2d 263
 
 , 267 (1992) (citations omitted). Our Supreme Court has held: "When the jury is in as good a position as the expert to determine an issue, the expert's testimony is properly excludable because it is not helpful to the jury."
 
 Braswell v. Braswell
 
 ,
 
 330 N.C. 363
 
 , 377,
 
 410 S.E.2d 897
 
 , 905 (1991) (citation omitted).
 

 *729
 

 B. Analysis
 

 Dr. Lori Van Wallendael was qualified and accepted by the court as an expert witness in the field of memory perception and eyewitness identification. Defendant sought to have Dr. Van Wallendael testify on his behalf concerning whether any factors were present that could have affected Albdoor's and Swedat's identifications of Defendant as the shooter. The State objected.
 

 The trial court conducted a
 
 voir dire
 
 hearing to determine whether to admit or exclude Dr. Van Wallendael's testimony. Dr. Van Wallendael identified four factors in the present
 
 *286
 
 case which could have affected Albdoor's and Swedat's identifications of Defendant: (1) the time factor, (2) the disguise factor, (3) the stress factor, and (4) the weapon focus effect.
 
 See generally
 
 Hon. D. Duff McKee,
 
 Challenge to Eyewitness Identification Through Expert Testimony
 
 , 35 Am. Jur. Proof of Facts 3d 1, § 10 (1996 & Supp. 2018) (describing psychological factors affecting eyewitness identification).
 

 Dr. Van Wallendael related that the time factor means the likelihood of an accurate identification increases the longer in time a witness has to view the perpetrator's face. For the second factor, a disguise refers to anything covering the face of the perpetrator, which decreases the chances of an accurate identification later by the eyewitness. The stress factor states that stress, especially from violent crimes, can significantly reduce an eyewitness's ability to remember accurately. Dr. Van Wallendael testified that studies on the weapon focus factor have shown people confronted with a weapon tend to concentrate their attention on the weapon itself, and not the individual holding the weapon, which decreases the likelihood of an accurate identification of the assailant or shooter later. Psychologists refer to this phenomenon as the weapon focus effect.
 
 See
 
 id.
 

 After hearing arguments from both sides, the trial court sustained the State's objection to Dr. Van Wallendael's opinion testimony concerning the time and disguise factors. The trial court noted these two concepts "are such elementary, common sense conclusions that it would be of little if any benefit to the jury to hear someone purporting to be an expert to espouse those opinions."
 

 The trial court, however, did allow Dr. Van Wallendael to testify on the stress factor and weapon focus effect, noting expert testimony on these two concepts "could be helpful to the jury." In addition, the trial court strongly admonished the defense and Dr. Van Wallendael not to express any opinion regarding the credibility or reliability of a witness.
 

 *730
 
 Defendant has failed to show any abuse of discretion by the trial court in partially sustaining the State's objection. The trial court properly found the time and disguise concepts were "common sense conclusions that ... would be of little if any benefit to the jury" and excluded expert testimony on these two factors.
 
 See
 

 Smith v. Pass
 
 ,
 
 95 N.C. App. 243
 
 , 251,
 
 382 S.E.2d 781
 
 , 786 (1989) ("Rule 702 permits a witness qualified as an expert to offer opinion testimony about his or her area of expertise
 
 if the trier of fact determines such testimony would be helpful to the jury
 
 ." (emphasis supplied) ).
 

 The trial court correctly found expert testimony on these two factors would be of little help to the jury and strongly admonished Dr. Van Wallendael not to express any opinion concerning the credibility or reliability of a witness, to prevent her testimony from invading the province of the jury.
 
 See
 

 State v. Scott
 
 ,
 
 323 N.C. 350
 
 , 353,
 
 372 S.E.2d 572
 
 , 575 (1988) ("The credibility of the witnesses and the weight to be given their testimony is exclusively a matter for the jury." (citation omitted) ).
 

 After the State objected, the trial court excused the jury, conducted a
 
 voir dire
 
 examination of Dr. Van Wallendael to determine the substance of her testimony, and heard and considered arguments of counsel before partially sustaining the State's objection. The trial court did allow Dr. Van Wallendael to testify to both the stress factor and weapon focus effect, noting these two concepts "could be helpful to the jury." Defendant has not shown the trial court abused its discretion in partially sustaining the State's objection to Dr. Van Wallendael's testimony.
 

 Although the trial court did not make a specific finding that the probative value of this admitted testimony outweighed its prejudicial effect, the procedure it followed demonstrates the trial court conducted its discretionary balancing test under Rule 403 and its ruling was "the result of a reasoned decision."
 
 State v. Riddick
 
 ,
 
 315 N.C. 749
 
 , 756,
 
 340 S.E.2d 55
 
 , 59 (1986) (citation omitted) ("A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision."). We defer to the trial court's exercise of discretion and its "reasoned decision."
 

 Id.
 

 Nothing in the trial court's ruling prevented
 
 *287
 
 Defendant from probing the time and disguise factors upon cross-examination of the State's witnesses and to bring forth and argue any asserted flaws and doubts in the victim's identification of Defendant as the perpetrator of the crime due to the length of time of the crime or the impact of any disguise the shooter wore. Defendant's argument is overruled.
 
 *731
 

 VI. Exclusion of Defendant's Telephone Conversation
 

 Defendant argues the trial court erred by allowing the State to offer portions of Defendant's 1 September 2014 telephone call with his grandmother into evidence, but refusing to allow Defendant to offer other portions from the same telephone call into evidence. Defendant asserts the exclusion of portions of the telephone call violated (1) the Rule of Completeness and (2) Defendant's constitutional "right to fully confront and cross-examine the witnesses against him."
 

 A. Rule of Completeness
 

 N.C. Gen. Stat. § 8C-1, Rule 106 (2017) codifies the common law Rule of Completeness and states: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."
 

 Our Supreme Court reviewed and addressed Rule 106 in
 
 State v. Thompson
 
 and noted North Carolina's rule is identical to the Federal rule, which has been interpreted and applied in many federal courts' decisions.
 
 332 N.C. 204
 
 , 219,
 
 420 S.E.2d 395
 
 , 403 (1992).
 

 The Court in
 
 Thompson
 
 set out the following principles as our standard of review:
 

 The lessons of the federal decisions discussing Rule 106 are well settled. Rule 106 codifies the standard common law rule that when a writing or recorded statement or a part thereof is introduced by any party, an adverse party can obtain admission of the entire statement or anything so closely related that in fairness it too should be admitted.
 
 The trial court decides what is closely related. The standard of review is whether the trial court abused its discretion.
 
 The purpose of the 'completeness' rule codified in Rule 106 is merely to ensure that a misleading impression created by taking matters out of context is corrected on the spot, because of the inadequacy of repair work when delayed to a point later in the trial.
 

 Federal decisions also make [it] clear that Rule 106 does not require introduction of additional portions of the statement or another statement that are neither explanatory of nor relevant to the passages that have been admitted.
 

 *732
 

 Id.
 
 at 219-20,
 
 420 S.E.2d at 403-04
 
 (emphasis supplied) (citations and internal quotation marks omitted).
 

 The admitted portions of the telephone conversation between Defendant and his grandmother tend to show Defendant possessed knowledge of the crime that only the shooter would know. Defendant sought to introduce an additional portion of the telephone conversation, in which Defendant's grandmother said "you didn't do it," and Defendant responded, "I know."
 

 The State objected on grounds that the trial court had already ruled only the portion of the telephone conversation previously agreed upon by both parties was admissible, which did not include the above exchange. Defendant argued the door had been opened by the admission of the agreed-upon limited portion of the conversation to admit the proffered statements.
 

 The trial court sustained the State's objection to the introduction of this portion of the conversation and noted if it ruled the agreed-upon portion of the conversation opened the door for any other part, that might be grounds for the State to demand admission of other clearly inadmissible parts of the conversation. Defendant's assertion that the trial court violated the Rule of Completeness and abused its discretion in sustaining the State's objection and excluding other portions of the 1 September 2014 telephone conversation is without merit.
 

 This portion of the conversation admitted before the jury dealt largely with Defendant's explanation to his grandmother of the
 
 *288
 
 evidence the State had amassed against him. Defendant must demonstrate the statements concerning whether and how the police had actually found the gun were taken out of context when introduced into evidence. Defendant's exculpatory statement to his grandmother was "neither explanatory of nor relevant to" his admitted statements regarding whether the police found the gun.
 
 See
 
 id.
 

 Presuming Defendant's conversation evinces knowledge of the crime, Defendant did not admit to the crime during the conversation and his response, "I know," to his grandmother's statement was not explanatory of or relevant to his other discussion of the State's recovery and possession of the gun.
 

 In excluding this portion of the telephone conversation, the trial court correctly expressed concerns that admission of this not agreed-upon portion of the telephone call could open the door to other portions of the conversation, which both parties had previously agreed were inadmissible. Defendant has failed to show the trial court abused its discretion when it sustained the State's objection to this portion of
 
 *733
 
 the 1 September 2014 telephone conversation. Defendant's arguments are overruled.
 

 B. Confrontation Clause Claim
 

 Defendant contends it was reversible error for the trial court to exclude the aforementioned portion of the 1 September 2014 telephone call because it violated his constitutional right to fully confront and cross-examine the witnesses against him.
 
 See
 
 U.S. Const. amend. VI ; N.C. Const. art. I, § 23. Defendant has failed to preserve this issue for appeal.
 

 1. Standard of Review
 

 Our Supreme Court has stated:
 

 It is well established that a defendant may waive the benefit of statutory or constitutional provisions by express consent, failure to assert it in apt time, or by conduct inconsistent with a purpose to insist upon it. It follows that in order for an appellant to assert a constitutional or statutory right on appeal, the right must have been asserted and the issue raised before the trial court. In addition, it must affirmatively appear on the record that the issue was passed upon by the trial court.
 

 State v. McDowell
 
 ,
 
 301 N.C. 279
 
 , 291,
 
 271 S.E.2d 286
 
 , 294 (1980) (citations omitted).
 

 2. Analysis
 

 Defendant referenced the Confrontation Clause briefly in his objection to authentication of the 1 September 2014 telephone conversation. The trial court and parties conferred and the trial court partially sustained the Defendant's objection. After the trial court ruled that certain portions of the telephone conversation would be inadmissible, Defendant's counsel stated, "I'm fine with the other portion." Mecklenburg County Sheriff's Office Sergeant Thomas Shields then testified to the authenticity of the recorded phone conversation and the agreed-upon portions were played before the jury.
 

 Later during cross-examination of Sergeant Shields, Defendant attempted to question Sergeant Shields about the statement counsel had previously agreed, and the court had ruled, to be inadmissible. The State objected. The trial court heard arguments from both sides and sustained the State's objection. During this exchange, defense counsel did not specifically assert Defendant's rights under the Confrontation Clause.
 

 *734
 
 Defendant's failure to raise the Confrontation Clause here is a waiver of these rights.
 
 See
 
 id.
 

 ;
 
 see also
 

 Monk
 
 ,
 
 132 N.C. App. at 254
 
 ,
 
 511 S.E.2d at 336
 
 (" 'In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the
 
 specific grounds
 
 for the ruling the party desired the court to make if the specific grounds were not apparent from the context.' " (citation omitted) ). This argument is dismissed.
 

 VII. Conclusion
 

 Defendant failed to preserve for review procedural issues regarding the State's objection to Dr. Van Wallendael's testimony. The trial court did not abuse its discretion by partially sustaining the State's objection to Dr. Van Wallendael's testimony regarding the commonsense time and disguise factors presumably affecting the reliability of eyewitness identification. Defendant was free to
 
 *289
 
 probe these factors from the State's witnesses and argue to the jury.
 

 The trial court also did not abuse its discretion by excluding portions of Defendant's 1 September 2014 jailhouse telephone conversation with his grandmother, after review, agreement and consent of counsel. Defendant failed to renew or preserve for review constitutional issues on the exclusion of the aforementioned conversation. Defendant received a fair trial, free from prejudicial errors he preserved and argued.
 
 It is so ordered.
 

 NO ERROR.
 

 Judges INMAN and BERGER concur.