STATE OF NORTH CAROLINA v. LACY LEE PRATT

No. 197A82

(Filed 5 October 1982)

1. **Criminal Law § 61.2— shoeprint comparison—lay testimony**
   The trial court did not err in permitting an officer's lay opinion testimony concerning the similarity of shoeprints found at the crime scenes and the design on the sole of the tennis shoes defendant was wearing at the time of his arrest.

2. **Criminal Law § 68; Rape and Allied Offenses § 4— microscopic consistency of hairs—relevancy**
   Expert testimony that pubic hairs taken from a rape victim and pubic hair samples obtained from defendant were "microscopically consistent" was relevant as tending to place defendant in the victim's presence at the time of the rape.

3. **Kidnapping § 1.2; Rape and Allied Offenses § 5; Robbery § 4.3— rape, kidnapping, and armed robbery—sufficiency of evidence**
   The evidence was sufficient for the jury to find that defendant was the perpetrator of a rape, two kidnappings and two armed robberies where one victim made a positive voice identification of defendant as the perpetrator, and where other evidence tended to show that a thumbprint identified as defendant's was found on the rear view mirror of the victims' car, that tennis shoe impressions found at the crime scene were made by tennis shoes defendant was wearing at the time of his arrest, and that pubic hair found on the rape victim's person was microscopically consistent with pubic hair samples taken from defendant.

State v. Pratt

4. **Criminal Law § 113.9 — recapitulation of evidence — necessity for objection at trial**

    Any objection to the court's recapitulation of the evidence must be brought to the court's attention in time to afford an opportunity for correction, and if timely objection is not made in the trial court, the error will not be considered on appeal.

5. **Robbery § 4.3 — armed robbery — ownership of property taken**

    In a prosecution for two armed robberies, there was no merit to defendant's contention that the trial court erred in submitting to the jury the offenses of armed robbery and common law robbery of the female victim on the ground that there was no evidence of a taking of any property belonging to her since (1) the evidence did show that the female victim had money of her own in the male victim's car and that defendant took it from her, and (2) there is no requirement in an armed robbery case that the person from whom property is taken be the owner thereof, and evidence that defendant took money from the female victim which did not belong to defendant was sufficient to support submission of the robbery offenses.

6. **Kidnapping § 1.2 — defendant not entitled to mitigating punishment for kidnapping**

    Defendant did not qualify for mitigated punishment under G.S. 14-39(b) for two kidnappings where the trial court found that defendant sexually assaulted the female victim, and where the court found that the male victim was not released by defendant in a safe place in that the victim released himself and he was not in a safe place because he had been bound, he had no hands, and he was undressed in the wintertime in an area unfamiliar to him.

APPEAL by defendant from *Hairston, J.,* at the 16 November 1981 Criminal Session of MONTGOMERY County Superior Court.

Defendant was charged with rape, two counts of kidnapping and two counts of armed robbery. He entered a plea of not guilty to each of the offenses charged.

The State offered evidence tending to show that on 21 February 1981, at approximately 9:00 p.m., Penny Jo Suggs (now Hoover) and Kenneth Hoover were parked in Hoover's 1979 Subaru near a place known as the "Pack House" in Candor, North Carolina. While in their parked automobile, the couple noticed two cars turn in from Whiskey Road in front of their car. The second car, a blue Ford Granada, stopped in front of the Subaru, focused its headlights on the couple for a few seconds and then proceeded toward the rear of the "Pack House."

Ms. Suggs testified that within a few minutes a black male, later identified by Ms. Suggs as the defendant, appeared from

behind the "Pack House" and approached Hoover's car, brandishing a double barrel shotgun. Defendant rapped on the passenger window and demanded that Ms. Suggs let him into the car. Ms. Suggs unlocked her door and defendant climbed into the back seat. Holding the shotgun to Hoover's head, defendant demanded that Hoover start the car and drive according to his directions. Defendant forced Hoover to drive to a secluded area known as the "pond." There, he ordered Mr. Hoover and Ms. Suggs out of the car. Ms. Suggs was told to remain beside the car while defendant led Mr. Hoover to a group of trees nearby. At gunpoint defendant demanded that Mr. Hoover hand over his wallet. Mr. Hoover informed defendant that all of his money was in the car. Defendant then ordered Hoover to undress from the waist down. When Hoover complied, defendant pushed him down, tied him to a tree and threw his clothes and shoes into the woods. Mr. Hoover, who was handicapped because he had no hands, was then abandoned.

Defendant then returned to where Ms. Suggs was standing and took from her all the money which had been in the car. He then forced her to return to the car and drove away from the "pond" area. Ms. Suggs testified that she noticed defendant reach up and adjust the rear view mirror as he drove away.

Defendant proceeded to a "sand pit" area where he ordered Ms. Suggs to get out of the car. Pointing the shotgun at her head, defendant informed Ms. Suggs she would be "a dead lady within three minutes." He then instructed her to disrobe from the waist down and to lie on the ground. After she complied with his demand, defendant raped her. After intercourse, defendant told her to get up and get dressed. He showed her a dirt road and told her she could reach the highway safely by proceeding in that direction. Defendant then got into Mr. Hoover's car once again and drove away.

Although neither victim could physically identify the defendant, Ms. Suggs was able to make a positive voice identification. Both Ms. Suggs and Mr. Hoover testified that the black male appeared to have a speech impediment. Ms. Suggs heard defendant's voice at the probable cause hearing and testified the voice was unmistakably that of the black man who committed the crimes on 21 February 1981.

The State offered additional evidence tending to show that a thumbprint identified as defendant's was found on the rear view mirror of Hoover's car.

Deputy Sheriff M. B. Mullinix testified that in his opinion the tennis shoe impressions found at the "pond" area and near the "Pack House" were made by the same Converse tennis shoes defendant was wearing at the time of his arrest. Bloodhounds tracked the footprints and scent to a point near defendant's residence.

Finally, an expert in hair comparison testified that the negroid pubic hair found on Ms. Suggs' person was "microscopically consistent" with pubic hair samples of defendant.

Defendant presented evidence in the nature of an alibi. Three witnesses testified they were with defendant from at least 8:30 p.m. until approximately 11:00 p.m. on the evening of 21 February 1981.

Defendant testified in corroboration of the alibi testimony and further related that he met a Mr. Cooper at 4:30 p.m. that afternoon and played basketball with him until 8:00 p.m. He and Cooper then drove to the Quik-Chek in Candor. Cooper entered the store while defendant remained outside. Defendant testified that he saw a blue Subaru roll from the gas pump. Defendant jumped out of his car and into the Subaru and "mashed down the emergency brakes" to keep the car from rolling away. Defendant testified he did not know whether he might have inadvertently hit the rear view mirror.

Defendant admitted to owning a blue Ford Granada but denied owning a gun. He also stated that he did not remember telling Detective Walser that he and his wife had gone to a movie on the night of 21 February 1981.

Mr. Hoover testified, in rebuttal, that the emergency brake to his Subaru must be pulled *up* by hand and that his car has automatic transmission.

The jury returned verdicts of guilty on all charges. The trial judge imposed sentences of life imprisonment on the rape and kidnapping charges, a sentence of forty to fifty years for the armed robbery of Kenneth Hoover and a sentence of seven to fourteen

years for the armed robbery of Penny Jo Suggs. Defendant appealed the life sentences directly to this Court pursuant to G.S. 7A-27(a). We allowed defendant's motion to bypass the Court of Appeals on the other charges pursuant to G.S. 7A-31(b).

*Rufus L. Edmisten, Attorney General, by Barry S. McNeill, Assistant Attorney General, for the State.*

*Millicent Gibson for defendant-appellant.*

BRANCH, Chief Justice.

[1] Defendant first contends the trial court erred in permitting lay opinion testimony regarding the similarity of shoeprints found at the crime scenes and the design on the sole of the tennis shoes defendant was wearing at the time of his arrest. Officer M. B. Mullinix was permitted to testify, over defendant's objection, that in his opinion defendant's Converse tennis shoes were the same shoes that had made the impressions in the sand at the "pond" area and near the "Pack House" where the black male approached Hoover's car.

Defendant argues this testimony was improper because there is no evidence showing when the footprints were made. Defendant further argues that the size and design of the tennis shoes are not unique to the defendant but are common to the general population. Also, defendant points to the time that elapsed between the assailant's encounter with the victims and the discovery of the footprints several hours later. For these reasons, defendant contends the similarity of the sole designs does not point with sufficient certainty to the defendant as the perpetrator to warrant submission of this evidence to the jury.

Initially, it must be borne in mind that this assignment of error challenges the *admissibility* of the shoeprint evidence rather than the sufficiency of the evidence, standing alone, to carry the case to the jury.

We are of the opinion that *State v. Jackson,* 302 N.C. 101, 273 S.E. 2d 666 (1981), squarely answers the question posed by this assignment of error adversely to defendant. There we stated:

> Evidence of shoeprints at the scene of the crime corresponding to those of the accused may always be admitted as tend-

ing more or less strongly to connect the accused with the crime. *State v. Long, supra; State v. Pinyatello, supra; State v. Warren,* 228 N.C. 22, 44 S.E. 2d 207 (1947); 1 Stansbury, North Carolina Evidence § 85 (Brandis rev. 1973).

In the present case, evidence of shoeprints found in the driveway the day following the attack which corresponded with those of the accused was properly admitted as tending to connect defendant with the crime. The admissibility of such evidence is consistent with the rule of relevance which permits the introduction of any evidence which "has any logical tendency however slight to prove the fact at issue in the case." 1 Stansbury, North Carolina Evidence § 77 (Brandis rev. 1973). Here, defendant's plea of not guilty placed upon the State the burden of proving every element of the crime charged, including identity. The shoeprint evidence was, therefore, admissible to corroborate the prosecuting witness's identification of defendant as her assailant. The weight to be given it was a matter for the jury since it was not the sole evidence connecting defendant with the crime.

*Id.* at 108-09, 273 S.E. 2d at 672. *See also, State v. Long,* 293 N.C. 286, 295-96, 237 S.E. 2d 728, 734 (1977).

Here the footprint evidence found within hours after the commission of the crimes was admissible as some evidence of the perpetrator's identity.

[2] By this same assignment of error, defendant contends the trial court erred in admitting the expert testimony of Special Agent Scott Worsham comparing the pubic hair found on Ms. Suggs with pubic hair samples obtained from defendant pursuant to a non-testimonial identification order. The witness testified the negroid pubic hair found on the victim was "microscopically consistent" with defendant's pubic hair and "could have originated from Lacy Lee Pratt." Defendant argues that because Agent Worsham could not positively identify the defendant from the hair comparison, the testimony was inadmissible. Defendant's contention is without merit.

This Court has consistently approved similar expert testimony regarding comparison of hair samples. In *State v. Barber,* 278 N.C. 268, 179 S.E. 2d 404 (1971), the State's expert

witness testified that hair samples taken from a rape victim's bed and from the defendant were "microscopically identical." We held such testimony admissible for it was a "link in the chain proving that the crime was committed by a Negro, and that that Negro was the defendant." *Id.* at 276-77, 179 S.E. 2d at 410. *See also, State v. Perry,* 298 N.C. 502, 509-11, 259 S.E. 2d 496, 501 (1979) (hair from victim's sweater "similar" to defendant's hair).

We find *Barber* directly applicable to instant case. The expert testified that the pubic hairs taken from Ms. Suggs and the samples obtained from defendant were "microscopically consistent." This testimony tended to place defendant in the victim's presence at the time of the rape and therefore satisfies the accepted legal standard that "evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case." 1 Stansbury's North Carolina Evidence § 77 at 234 (Brandis rev. ed. 1973). This assignment of error is overruled.

Defendant next assigns as error the trial court's denial of his motion for nonsuit and to dismiss all charges made at the close of the State's evidence.

North Carolina General Statute 15-173 provides that "[i]f the defendant introduces evidence, he thereby waives any motion for dismissal or judgment as in case of nonsuit which he may have made prior to the introduction of his evidence and *cannot urge such prior motion as ground for appeal.*" (Emphasis added.) Defendant presented evidence on his own behalf at trial and thereby waived his right to assert on appeal the denial of his motion for nonsuit and dismissal made at the close of the State's evidence. Only defendant's motion made at the close of all the evidence is subject to appellate review.

[3] Defendant also assigns as error the trial court's denial of his motion for nonsuit and to dismiss all charges made at the close of his evidence and again at the close of all the evidence. Defendant maintains that the circumstantial evidence against him, even when considered in the light most favorable to the State, was insufficient to warrant submission of the charges to the jury. Defendant argues the shoeprint, fingerprint, and hair identification evidence was inconclusive and did not distinguish defendant as the perpetrator of the crimes.

In advancing these arguments, defendant totally ignores the unequivocal voice identification of him by Ms. Suggs. Ms. Suggs testified, without objection, that upon hearing defendant's voice at the probable cause hearing, she unquestionably recognized the voice as that of her assailant. Irrespective of the circumstantial evidence, the probative value of which defendant strenuously disputes, this voice identification was sufficient in itself to justify submitting the case to the jury. *State v. Jackson*, 284 N.C. 321, 335, 200 S.E. 2d 626, 635 (1973); *State v. Cogdale*, 227 N.C. 59, 61, 40 S.E. 2d 467, 468-69 (1946). The shoeprint, thumbprint, and hair identification evidence merely tended to corroborate the victim's voice identification of defendant.

The trial court properly denied defendant's motion for nonsuit and to dismiss all charges at the close of all the evidence.

By his fourth assignment of error, defendant contends the trial court erred in summarizing the evidence as to the robbery from Ms. Suggs. The trial judge instructed the jury:

> [T]he assailant — or the alleged assailant, drove off and after driving around ended up at a location called the sand pit; that there he asked Penny Suggs what about her money. She indicated that it was in the car.

The defendant maintains this recapitulation of the State's evidence was erroneous because there was nothing in the record to indicate the assailant took money from Ms. Suggs or from the car.

To the contrary, the State did offer evidence tending to support the trial court's charge. Officer Walser testified that in a statement given to him by Ms. Suggs she indicated that, after forcing Mr. Hoover to get undressed, the black male returned to where she was standing and "took the money from her." On questioning from the court, Ms. Suggs testified that her money was in the car. Therefore, we conclude there was sufficient evidence that defendant took money from Ms. Suggs to justify the court's charge.

[4]   Furthermore, even if the evidence was misstated, the defendant failed to make any objection or otherwise bring to the court's attention any error in the summarization. Any objection to the court's recapitulation of the evidence presented must be brought

to the court's attention in time to afford an opportunity for correction. *State v. Squire*, 302 N.C. 112, 119-20, 273 S.E. 2d 688, 693 (1981); *State v. Willard*, 293 N.C. 394, 402, 238 S.E. 2d 509, 514 (1977). If timely objection is not made in the trial court, the error will not be considered on appeal. *State v. Squire, supra.* By failing to note his objection so that it might be remedied by the trial judge, defendant waived any right to assert error in this regard.

[5] By this same assignment of error, defendant contends the trial court erred in submitting to the jury the offenses of armed robbery and common law robbery of Penny Jo Suggs. Defendant argues the submission of these charges was erroneous because there was no evidence presented that there had been a taking of any property belonging to *her.* While we feel the evidence presented did show that Ms. Suggs had money of her own in the car and that defendant took it from her, such a finding is not necessary to refute defendant's argument. Defendant's contention is without merit simply because there is no requirement that the person from whom the property is taken be the owner thereof. 67 Am. Jur. 2d *Robbery* § 14 (1973). *See also State v. Spillars*, 280 N.C. 341, 345, 185 S.E. 2d 881, 884 (1972); *State v. Rogers*, 273 N.C. 208, 212-13, 159 S.E. 2d 525, 528-29 (1968); *State v. Lynch*, 266 N.C. 584, 586, 146 S.E. 2d 677, 679 (1966). As long as it can be shown defendant was not taking his own property, ownership need not be laid in a particular person to allege and prove robbery. *State v. Spillars, supra*, at 345, 185 S.E. 2d at 884. Obviously in instant case defendant was not retrieving his own property from Ms. Suggs. Thus, it makes no difference whether Ms. Suggs or Mr. Hoover owned the money. The charges of armed robbery and common law robbery were properly submitted to the jury.

Defendant also assigns as error the denial of his motions to set aside the verdicts based upon insufficiency of the evidence.

A motion to set aside the verdict as being against the weight of the evidence is addressed to the discretion of the trial court, and its refusal to grant the motion is not reviewable on appeal in the absence of abuse of discretion. *State v. Hamm*, 299 N.C. 519, 523, 263 S.E. 2d 556, 559 (1980); *State v. Boykin*, 298 N.C. 687, 702, 259 S.E. 2d 883, 892 (1979), *cert. denied*, 446 U.S. 911, 64 L.Ed. 2d 264, 100 S.Ct. 1841 (1980). Ms. Suggs identified defendant by voice and this evidence alone was sufficient to withstand nonsuit. There

was also considerable circumstantial evidence tending to implicate defendant. We find no abuse of discretion in the trial court's denial of defendant's motions.

[6] Finally defendant contends the trial court erred in finding that the kidnappings were aggravated kidnappings pursuant to G.S. 14-39(b).[1] It should be noted from the outset that the term "aggravated kidnapping" is a misnomer and should not be used in connection with this statute. *See State v. Williams*, 295 N.C. 655, 664, 249 S.E. 2d 709, 716 (1978). G.S. 14-39(a) defines the crime of kidnapping. Subsection (b) of the statute prescribes the punishment for kidnapping as well as a lesser punishment when certain mitigating circumstances appear. To qualify for the lesser punishment, defendant must show, by a preponderance of the evidence, that he released the kidnap victim in a safe place and that the victim was neither sexually assaulted nor seriously injured. *Id.* at 670, 249 S.E. 2d at 719. Defendant objects to the trial court's failure to find the existence of these mitigating factors entitling him to the lesser punishment provided in G.S. 14-39(b).

The trial court found that defendant did not release Mr. Hoover; that Mr. Hoover released himself; and that Mr. Hoover "was not in a safe place considering that he had been bound, that he was undressed in the wintertime in an area unfamiliar to him, and in view of his obvious handicap which appears of record, that he has no hands." As to the female victim, the trial court found she had been sexually assaulted by defendant.

1. At the time of defendant's trial and conviction, G.S. 14-39(b) provided as follows: "(b) Any person convicted of kidnapping shall be guilty of a felony and shall be punished by imprisonment for not less than 25 years nor more than life. If the person kidnapped, as defined in subsection (a), was released by the defendant in a safe place and had not been sexually assaulted or seriously injured, the person so convicted shall be punished by imprisonment for not more than 25 years, or by a fine of not more than ten thousand dollars ($10,000), or both, in the discretion of the court."

G.S. 14-39(b) was amended, effective 1 July 1981. The statute now provides for two degrees of kidnapping and reads, in pertinent part, as follows: "If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class D felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony."

The evidence unquestionably supports the trial court's findings. We agree with the trial court that defendant did not qualify for mitigated punishment under G.S. 14-39(b). This assignment of error is without merit.

Our careful examination of this entire record reveals no error warranting that the verdict or judgment be disturbed.

No error.