STATE OF NORTH CAROLINA v. WILLIAM RAY RIDDLE

No. 8329SC460

(Filed 17 January 1984)

### 1. Criminal Law § 22— no record of arraignment—no prejudicial error

Although the record was silent as to whether or not defendant had a for-mal arraignment, the judge in his charge to the jury said, "The defendant, by his plea of not guilty, has denied his guilt," the defendant was in court, his at-torney participated in the trial, and defendant called witnesses who testified in the defense of the defendant, and defendant was in no way prejudiced by the lack of formal arraignment and could not now claim reversible error. G.S. 15A-941; G.S. 15A-945.

### 2. Criminal Law § 77.1— defendant's statement as to age, height, and weight— admissible

There was sufficient evidence and testimony in support of the trial court's findings of fact and subsequent conclusion that defendant was not under ar-rest, that he was not threatened, coerced or intimidated in any  manner, and

no promises or threats were made, that defendant was free to leave at any time, and that it was not necessary or required that *Miranda* warnings be given him when he stated his date of birth, sex, race, age, height, weight, color of eyes, color of hair and nickname.

**3. Criminal Law § 102.7— closing argument—prosecutor's comments not prejudicial error**

A prosecutor's comments in his closing argument which, in essence, constituted an argument to the jury that they should not believe defendant's evidence of alibi represented a reasonable comment on the evidence and was not prejudicial error.

Judge BECTON dissenting.

APPEAL by defendant from *Thornburg, Judge.* Judgment entered 3 December 1982 in Superior Court of MCDOWELL County. Heard in the Court of Appeals 5 December 1983.

Defendant was convicted of second degree burglary and received an active sentence. He appeals.

The facts pertinent to this appeal can be summarized as follows: During the early morning hours of 21 July 1982, Howard Lee Hollifield awoke to find an intruder crawling on his hands and knees in his bedroom. Hollifield turned on the light, the intruder jumped up, and Hollifield got a "pretty good look at him."

After the intruder left, Hollifield noticed his wallet was missing from his trousers. He called the sheriff's department and described the intruder as being six feet tall, weighing 130 to 140 pounds, of slender build, thin faced, with dark brown hair of medium length. The intruder was wearing Levis, possibly tennis shoes, and a red headband, but not a shirt.

A bloodhound traced the intruder toward the residence of Barry Hensley, but lost the scent at the paved road. Hensley was known to wear a headband, was of similar build as defendant, and had been seen in the area previously. The investigating officer noted initially the main suspect was Barry Hensley.

On the evening of the break-in, both Hensley and the defendant, Hollifield's neighbor, were at the residence of Morris Radford, next door to Hollifield, shooting pool and drinking beer. There was evidence that defendant left the Radford residence between 2:00 and 2:30 a.m., saying he was going home to bed, and that Hensley left at 4:00 a.m. However, a witness for the State

testified she saw a car leave defendant's mother's house at approximately 3:30 a.m. The car went to a point in the general neighborhood where the motor was cut off and started up again approximately half an hour later. The car then returned to the Riddle residence.

Two photographic line-ups were conducted. Hollifield failed to identify defendant in the first group of pictures; but did identify him from a later photographic line-up, at which time defendant's photograph had been added.

On 6 August 1982 officers of the McDowell County Sheriff's Department were "on the lookout" for defendant throughout the county and saw the defendant riding with a Miss Nesbitt in Marion. The officer pulled the Nesbitt car over and advised the defendant that "we needed to talk to him." The officers followed defendant to the courthouse where Officer Cline interviewed him, asking questions concerning defendant's height, weight and employment. Thereafter, Officer Cline advised defendant of his rights to remain silent and to have counsel, and defendant declined to make any statement.

Hollifield identified the defendant sitting in the courtroom as the intruder. Defendant did not take the witness stand in his defense, but offered evidence through other witnesses tending to show alibi.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Guy A. Hamlin for the State.*

*Goldsmith and Goldsmith, by C. Frank Goldsmith, Jr. for defendant appellant.*

HILL, Judge.

[1] For his first assignment of error, defendant contends his statutory and constitutional rights were violated because he was not arraigned in open court. Arraignment is mandatory unless waived in writing prior to the day for which arraignment is calendared in the manner provided by statute. G.S. 15A-945. An arraignment is a proceeding whereby a defendant is brought before a judge having jurisdiction to try the offense, so that the defendant may be formally apprised of the charges pending against him

and directed to plead to them. G.S. 15A-941. Should the defendant fail to plead after the prosecutor has read the charges or otherwise fairly summarized them, the court must record the fact, and defendant must be tried as if he had entered a plea of not guilty. "Where there is no doubt that a defendant is fully aware of the charge against him, or is in no way prejudiced by the omission of formal arraignment, it is not reversible error for the trial court to fail to conduct a formal arraignment proceeding." *State v. Smith,* 300 N.C. 71, 73, 265 S.E. 2d 164, 166 (1980).

Here the record is silent as to any arraignment. However, the judge in his charge to the jury said, "The defendant, by his plea of not guilty, has denied his guilt . . . ." The defendant was in court, his lawyer participated in the trial, and defendant called witnesses who testified in the defense of the defendant. Defendant in no way was prejudiced by the lack of formal arraignment and cannot now claim reversible error. *State v. McCotter,* 288 N.C. 227, 217 S.E. 2d 525 (1975). This assignment of error is overruled.

[2] Defendant claims the trial court erred in admitting his custodial statements because he was not warned of his *Miranda* rights and was seized without probable cause. Over defendant's objections Officer Cline was permitted to testify to the jury that defendant had stated his height to be six feet, his weight 150 pounds, and that he had stated he was unemployed. Defendant contends the questions and answers were relevant to the identity of the defendant as being the intruder seen by Mr. Hollifield, and to defendant's possible motive for having taken Mr. Hollifield's billfold. We disagree.

A *voir dire* was heard to consider the admissibility of the challenged statement. Defendant on *voir dire* testified that he had not understood he was free to leave at the time he was being questioned at the sheriff's department by armed officers who were identified to him as detectives. The defendant, in fact, understood that he was coming to the courthouse, in addition to being directed by the officer to go there, to turn himself in on a probation violation. Officer Cline admitted defendant told him when he came to the sheriff's department "that he knew that there was a warrant or was going to be a warrant issued on him for a probation violation."

At the conclusion of the *voir dire*, the trial court found as fact that the defendant was not under arrest, that he was not threatened, coerced, or intimidated in any manner, that no promises or threats were made, that defendant was free to leave at any time, and that it was not necessary or required that the *Miranda* warnings be given him as "*Miranda* warnings and waiver of counsel are required when, and only when, the defendant is being subjected to custodial interrogation." *State v. Sykes*, 285 N.C. 202, 205, 203 S.E. 2d 849, 851 (1974). Defendant was not in custody at the time he answered the questions. Such personal data was nothing more than a general investigation of the offense. Defendant voluntarily came to the sheriff's office. He was free to leave. Therefore, the court concluded defendant's statement as to date of birth, sex, race, age, height, weight, color of eyes, color of hair and nickname to be properly admissible.

The trial judge made findings of fact and rendered his conclusions thereon. If supported by competent evidence, the findings of fact are conclusive and binding on the appellate courts. *State v. Thompson*, 287 N.C. 303, 214 S.E. 2d 742 (1975). The record reveals sufficient evidence and testimony in support of the findings of fact. They in turn support the conclusions. We find no error in the ruling by the trial judge on this point.

[3] Defendant contends that the prosecutor's statements made in his closing argument constituted prejudicial error. In the present case the defendant had presented to the jury evidence tending to show alibi. The prosecutor made statements suggesting that more evidence tending to show alibi would have been produced had certain witnesses testified. While it is improper for a lawyer in his argument to assert his opinion that a witness is lying, "he can argue to the jury that they should not believe a witness. . . ." *State v. Noell*, 284 N.C. 670, 696, 202 S.E. 2d 750, 767 (1974). In essence, the prosecutor's comments constituted an argument to the jury that they should not believe defendant's evidence of alibi, and therefore, the remarks represented a reasonable comment on the evidence.

We have examined defendant's remaining assignments of error and find them without merit.

No error.

Chief Judge VAUGHN concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

Although N.C. Gen. Stat. § 84-14 (1981) permits counsel to argue the "whole case as well of law as of fact . . . to the jury," counsel may not inject into the trial his beliefs and personal opinions which are not supported by the evidence. *State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283 (1975); *see also State v. Locklear,* 294 N.C. 210, 241 S.E. 2d 65 (1978). Believing that the argument made by the prosecuting attorney in this case transcends the bounds of propriety and fairness, I dissent.

In his closing argument, the assistant district attorney told the jury that he had not called a Mrs. Teague to testify during the State's case in chief because "I knew that if I put Mrs. Teague on, this line of six witnesses [the defendant's witnesses] . . . would explain that away too." Although the trial court sustained defendant's objection to that argument and instructed the jury not to consider it, the assistant district attorney later made the same argument to the jury, using slightly different words:

> Members of the jury, you will recall that this morning I put on testimony relating to the headband and defendant's witnesses took the stand and they said, 'Oh, yes, Barry Hensley had on a headband.' In light of that, I waited to put the other witness on and I submit to you that if I had put Mrs. Teague on this morning, in all likelihood, the evidence would be, 'Oh, yes, Barry Hensley was driving that car that night.'

> MR. GOLDSMITH: Objection.

> THE COURT: Overruled.

> Or somebody would say, 'Oh, yes, I took the car about quarter til four in the morning just exactly like that lady said I took the car and went down this road and on down here several miles to visit some friend of mine.' I submit to you, members of the jury, that that would have been covered also.

To put the prosecutor's argument in context, it should be noted that Barry Hensley, according to the investigating officer,

was initially the "main suspect." The facts which suggest that Barry Hensley was the main suspect are adequately detailed by the majority, ante pp. 1, 2. That some of defendant's alibi witnesses also testified that Barry Hensley was wearing a red headband on the night in question does not make the prosecutor's argument proper. After all, the investigating officer was well aware of the fact that Barry Hensley had been seen wearing a headband.

It was quite proper for the State, once defendant had presented evidence that he was at home at the time of the crime, to put on rebuttal evidence by Mrs. Teague that she saw a car leave the defendant's mother's house at approximately 3:30 a.m. and drive to some point in the general neighborhood, where she heard the car motor cut off and start up again approximately half an hour later and that the car returned to defendant's residence. It was improper, however, for the assistant district attorney to suggest that he decided not to call Mrs. Teague in the State's case in chief because the defendant's witnesses would have, in effect, lied. To permit the prosecutor to explain his trial strategy to the jury by suggesting that the order of his witnesses was dictated by his personal belief that otherwise "in all likelihood" the defendant's witnesses would have conformed their stories to fit what they had heard, is improper. In *State v. Locklear*, the defendant's conviction was reversed for improper remarks by the district attorney concerning the credibility of the defendant. Moreover, Disciplinary Rule 7-106(c)(4) of the North Carolina Code of Professional Responsibility (1974) forbids a lawyer from asserting his personal opinion "as to the justness of a cause, as to the credibility of a witness, . . . or as to the guilt or innocence of an accused. . . ." Indeed, our Supreme Court in *State v. Locklear*, quoting from the *Standards Relating to the Prosecution Function and Defense Function* § 5.8(b), at 126 (Approved Draft 1971), stated: "It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." 294 N.C. 210, 216, 241 S.E. 2d 65, 69.

I believe the prosecutor's argument was improper and prejudicial. I, therefore, vote for a new trial.