STATE OF NORTH CAROLINA v. ROBERT LEE STYLES, JR.

No. 8822SC654

(Filed 16 May 1989)

### 1. Criminal Law § 22— absence of arraignment—defendant not prejudiced

Defendant was not prejudiced by the absence of a formal arraignment where he failed to object at trial to this omission, and there is no doubt that defendant was fully aware of the charges against him since the charges were summarized and his not guilty plea stated to the jury during *voir dire* jury instructions while defendant was in the courtroom.

### 2. Criminal Law § 91.9— right not to be tried week of arraignment—waiver

Defendant waived his statutory right not to be tried in the week of arraignment by failing to seek a continuance of his trial. N.C.G.S. § 15A-943(b) (1988).

### 3. Burglary and Unlawful Breakings § 5— sufficient evidence of breaking

There was sufficient evidence of a breaking to support defendant's conviction of first degree burglary where the victim testified that screens on her windows were all in place when she went to bed the night in question; she supposed the four doors leading into her house were closed because "we usually shut them"; the last time she saw the doors that night was at 9:00 p.m. when her nephew and his son left her home; and the nephew usually shuts the door when he leaves.

### 4. Rape and Allied Offenses § 5— rape and sexual offense—defendant as perpetrator—sufficiency of evidence

Circumstantial evidence presented by the State was sufficient for the jury to find that defendant was the perpetrator of a rape and a sexual offense, although the victim was unable to identify defendant as the perpetrator, where it tended to show that hairs found at the crime scene were microscopically consistent with those of defendant and could have originated from defendant; a bloodhound trained in tracking human beings followed a path from the victim's house to a culvert and then to the trailer where defendant was staying; and shoe prints in the sand by the culvert and in the dust on the hard-

wood floor of the victim's bedroom matched the treads of defendant's shoes.

**5. Robbery § 4.2 — common law robbery — sufficiency of evidence**

The State's evidence was sufficient for the jury to find that money was taken by defendant from the presence of the victim by violence or by putting her in fear so as to support defendant's conviction of common law robbery where it tended to show that the victim had a ten-dollar bill in a brown envelope with her name on it inside her bra that was hanging on a chair near her bed; the bra and brown envelope were found in a culvert near defendant's trailer; the ten-dollar bill was not in the envelope; shoe prints matching the tread on defendant's shoes were found near the culvert and in the victim's bedroom; and the money was taken after defendant had forced the victim to have vaginal and anal intercourse and to perform fellatio, threatened to kill her, and hit her several times.

**6. Criminal Law § 138.24 — first degree burglary — victim's old age improper aggravating factor**

The trial court erred in finding old age of the ninety-two-year-old victim as an aggravating factor for first degree burglary where there was no evidence that the victim's home was targeted for burglary because of her old age and the victim was asleep during the entire burglary.

**7. Criminal Law § 111.1 — court's remarks to prospective jurors — charges against defendant**

The trial judge is required to inform the prospective jurors of the charges against defendant and not the elements of each crime charged. N.C.G.S. §§ 15A-1213 and 15A-1221(a)(2).

**8. Criminal Law § 102.6 — jury argument — personal beliefs — no gross impropriety**

Alleged expressions of personal beliefs by the prosecutor in his jury argument were not so grossly improper as to require the trial court to intervene *ex mero motu.*

**9. Criminal Law § 102.8 — jury argument — defendant's failure to testify — veiled reference — no gross impropriety**

The prosecutor's closing argument that the jury should compare certain characteristics to the defendant and to a State's witness "who you got to see up there; to hear from" was at

most only a veiled reference to defendant's failure to testify and did not amount to a gross impropriety which required the trial court to intervene *ex mero motu.*

**10. Criminal Law § 96— evidence of defendant's criminal record— instruction to disregard—failure to request further instruction**

Any impropriety in an officer's testimony referring to defendant's prior criminal record is presumed cured by the trial court's instruction to "disregard that, ladies and gentlemen," and it was not error for the court to fail to instruct the jury that a prior conviction cannot be used as evidence of defendant's guilt absent a request for such an instruction.

**11. Criminal Law § 43.1— photographs of defendant—admission for illustrative purposes**

Photographs taken of defendant at the time of his arrest were properly admitted for the purpose of illustrating testimony about defendant's appearance where the victim testified that her assailant had a moustache and was not clean shaven but had no beard.

Judge PHILLIPS concurs in the result.

Judge COZORT concurring in part and dissenting in part.

APPEAL by defendant from *Ross (Thomas W.), Judge.* Judgments entered 26 January 1988 in Superior Court, ALEXANDER County. Heard in the Court of Appeals 24 January 1989.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Kaye R. Webb, for the State.*

*Daniel R. Greene, Jr. for defendant-appellant.*

GREENE, Judge.

In this criminal action, defendant was found guilty by a jury for first-degree burglary, N.C.G.S. Sec. 14-51 (1986), second-degree sexual offense, N.C.G.S. Sec. 14-27.5 (1986), second-degree rape, N.C.G.S. Sec. 14-27.3 (1986), and common-law robbery, N.C.G.S. Sec. 14-87.1 (1986). Defendant was sentenced to terms of fifty years, twenty years, twenty years, and ten years respectively, all to be served consecutively. Defendant appeals.

The evidence at trial tended to show: On 31 May 1987, Cora Lillian Jolly, age seventy-four, was living with her ninety-three

year old invalid sister Allie Jolly Isenhour in Mrs. Isenhour's house near Mecimore Trailer Park. On the night of 31 May, Ms. Jolly put Mrs. Isenhour to bed and then went to bed herself at approximately 11:00 p.m. The two women slept in separate bedrooms. Ms. Jolly was awakened when a man put one hand on her head and the other one over her mouth. The man was right over her at the side of the bed and told her to be quiet and not to make any sound or he would kill her. The man then crawled up on her bed and proceeded to have vaginal and anal intercourse with Ms. Jolly and forced her. to perform fellatio. During this time, he called Ms. Jolly "a little bitch a time or two," took her foot and jerked her around on the bed, grabbed her breast and told her he would cut it off, and hit her on her face, shoulder and hip. At one point he threatened to kill Ms. Jolly and her sister and Ms. Jolly asked him to please not hurt her sister because she was an invalid. The man told Ms. Jolly he wanted some guns and money. She told him she had none although in actuality she had a ten dollar bill in a brown envelope with her name on it inside her bra. Her bra was hanging on a chair two or three feet from her bed. Ms. Jolly testified she knew the man had gotten the money because she heard him "a 'rambling around in there."

When the man left her house he told her to lie on the other side of the bed and stay there for fifteen minutes. She heard banging around in the kitchen and then heard the back door shut. She did not hear a car start up. She tried to telephone for help but discovered the phone did not work. She went out on her porch around 5:00 a.m. to get some air and a little later saw Jerry Isenhour coming down the road to the barn. Ms. Jolly told Jerry Isenhour what had happened. The Sheriff's Department was called and an officer arrived shortly thereafter.

Although Ms. Jolly was unable to identify the defendant, she described the perpetrator as a white, small male, in his early twenties wearing a cap, tan shorts, a sweat shirt and tennis shoes. He did not have any body fat and was not clean shaven but had no beard although he did have a moustache.

On 31 May 1987, two bloodhounds detected a track leading from the back of the Jolly residence to a culvert at Mecimore Trailer Park and then to the front door of James Workman's trailer where Robert Lee Styles, Jr. (hereinafter the "defendant") was staying. Inside the trailer, defendant was found lying on the bed

in the first bedroom wearing a pair of jeans. An agent with the State Bureau of Investigation observed a pair of running shoes and a pair of socks sitting next to a chair by the front door. The shoes were taken as evidence. At that time the defendant had a sparse beard and a moustache.

What appeared to be blood was observed on the bed in Ms. Jolly's bedroom. In addition, shoe prints were found in the dust on the hardwood floor of the bedroom. Shoe prints were also discovered by the culvert near the entrance of the Mecimore Trailer Park. Expert testimony rendered in the form of an opinion revealed that defendant's tennis shoes seized from the trailer made the prints in Ms. Jolly's bedroom and the prints by the culvert. Additional expert testimony revealed that the hairs found on the floor and bed in the bedroom were microscopically consistent with those of defendant and could have originated from the defendant.

A shovel was found in the culvert at the entrance of Mecimore Trailer Park near where the shoe prints were discovered. A woman's bra, a phone cord, an envelope with the name "Lillian" on it, and some napkins were pulled out of the culvert with the shovel.

Defendant was arrested on 3 June 1987.

---

The following issues are presented for review: Did the trial court err I) in allowing the defendant to be tried without being formally arraigned; II) in failing to dismiss the charge of first-degree burglary for insufficient evidence; III) in failing to dismiss the charges of second-degree rape and second-degree sexual offense for insufficient evidence; IV) in failing to dismiss the charge of common-law robbery for insufficient evidence; V) by imposing a sentence in excess of the presumptive sentence for first-degree burglary; VI) in understating the elements of the offenses for which the defendant was charged during the trial court's opening remarks to the jury; VII) in allowing the district attorney to exceed the bounds of propriety in his closing argument to the jury without following said impropriety with an admonishment to the jury or correcting instructions; VIII) by allowing the district attorney to comment to the jury during closing arguments on defendant's failure to testify and by not following said comment with an admonishment to the jury or correcting instructions; IX) in failing to admonish the jury or provide correcting instructions after a law enforcement officer made a reference to defendant's prior criminal record while

testifying; and X) in failing to sustain defendant's objection to the introduction into evidence of two photographs of defendant taken the day he was arrested.

I

[1] For his first assignment of error, defendant contends the trial court erred in allowing the defendant to be tried when he had never been arraigned. We find this assignment of error to be without merit.

"An arraignment is a proceeding whereby a defendant is brought before a judge having jurisdiction to try the offense, so that the defendant may be formally appraised of the charges pending against him and directed to plead to them." *State v. Riddle*, 66 N.C. App. 60, 62-63, 310 S.E. 2d 396, 397, *aff'd*, 311 N.C. 734, 319 S.E. 2d 250 (1984). At the arraignment "[t]he prosecutor must read the charges or fairly summarize them to the defendant" and should the defendant thereafter fail to plead, "the court must record that fact, and the defendant must be tried as if he had pleaded not guilty." N.C.G.S. Sec. 15A-941 (1988). Failure to conduct a formal arraignment is not in itself prejudicial error "unless defendant objects and states that he is not properly informed of the charges." *State v. Brown*, 306 N.C. 151, 174, 293 S.E. 2d 569, 584, *cert. denied*, 459 U.S. 1080, 103 S.Ct. 503, 74 L.Ed. 2d 642 (1982). Furthermore, "[w]here there is no doubt that a defendant is fully aware of the charge[s] against him, or is in no way prejudiced by the omission of formal arraignment . . .," the omission is not reversible error. *Riddle*, 66 N.C. App. at 63, 310 S.E. 2d at 397-98 (*quoting State v. Smith*, 300 N.C. 71, 73, 265 S.E. 2d 164, 166 (1980)).

Although as defendant contends, the record is silent as to a formal arraignment, the defendant here never objected before the trial to this omission. Furthermore, as the charges against the defendant were summarized to the jury and his plea of not guilty stated to the jury during *voir dire* jury instructions while the defendant was in the courtroom, there is no doubt defendant was fully aware of the charges against him and that he suffered no prejudice by not being formally advised of the pending charges at an arraignment. *See Riddle*, 66 N.C. App. at 63, 310 S.E. 2d at 398.

Defendant also argues that it does not appear he was ever advised of his right to counsel pursuant to Section 15A-942 which provides for such advisement at the arraignment if defendant appears without counsel. N.C.G.S. Sec. 15A-942 (1988). As it is clear

from the record that defendant was represented by counsel, he cannot now claim he was prejudiced by not being informed of such right.

[2]  Defendant also contends that because there was no formal arraignment, it cannot be ascertained whether he was "tried without his consent in the week in which he . . . [was] arraigned" in violation of Section 15A-943(b). N.C.G.S. Sec. 15A-943(b) (1988). We find no merit to this argument. As the defendant failed to assert this right in the trial court by seeking a continuance of his trial, he waived his statutory right not to be tried the week in which he was arraigned. *State v. Davis*, 38 N.C. App. 672, 675, 248 S.E. 2d 883, 885-86 (1978).

II

[3]  Defendant next assigns as error the trial court's denial of his motion to dismiss the charge of first-degree burglary. We find no merit to this assignment of error.

On a motion to dismiss, the evidence must be viewed in the light most favorable to the State "with inconsistencies and contradictions therein disregarded." *State v. Davis*, 92 N.C. App. 627, 633, 376 S.E. 2d 37, 41, *temp. stay allowed*, 324 N.C. 249, 377 S.E. 2d 247 (1989). When the evidence is viewed in such light, if there is substantial evidence to support each essential element of the crime charged, the judge must overrule the motion and submit the case to the jury. *Id.*

First-degree burglary is defined as "the unlawful breaking and entering of an occupied dwelling or sleeping apartment in the nighttime with the intent to commit a felony therein." *State v. Sweezy*, 291 N.C. 366, 383, 230 S.E. 2d 524, 535 (1976). The defendant contends there was insufficient evidence that a "breaking" occurred. Entry through an open window or door does not constitute a breaking although the mere pushing or pulling of an unlocked door does. *State v. McCoy*, 79 N.C. App. 273, 275, 339 S.E. 2d 419, 421 (1986); *Sweezy*, 291 N.C. at 383, 230 S.E. 2d at 535.

The victim here testified that on 31 May she had screens on her windows and they were in place when she went to bed that night. There are four doors that lead from her house to the outside and although she did not know definitely whether her doors were closed when she went to bed the night of 30 May, she supposed the doors were shut because "we usually shut them." The

last time the victim saw the doors was approximately 9:00 p.m. when her nephew and his son left her home. Her nephew usually shuts the door when he leaves. When viewed in the light most favorable to the State, there is substantial evidence to show the doors and windows to the victim's house were closed and to support a charge of breaking and entering. Therefore, the court properly refused the defendant's motion to dismiss this charge.

### III

[4] The defendant next assigns as error the court's failure to dismiss the charges of second-degree rape and second-degree sexual offense on the ground there was insufficient evidence to show the defendant was the perpetrator of the offenses. We find no merit to this assignment of error.

Although defendant admits there was evidence which tended to link the defendant to the crimes, he argues that because the victim was not able to identify the defendant as the perpetrator, the evidence was insufficient on the charges. In order for evidence to be sufficient to withstand a motion to dismiss, it must give rise to a reasonable inference of defendant's guilt based on the circumstances. *State v. Jones*, 303 N.C. 500, 504, 279 S.E. 2d 835, 838 (1981); *State v. Nelson*, 69 N.C. App. 455, 459, 317 S.E. 2d 70, 73, *disc. rev. denied*, 312 N.C. 88, 321 S.E. 2d 905 (1984). "[I]t is for the members of the jury to decide whether the facts shown satisfy them beyond a reasonable doubt of defendant's guilt." *Jones*, 303 N.C. at 504, 279 S.E. 2d at 838. This test applies when the evidence is circumstantial, direct, or both. *Id*.

Here, the circumstantial evidence shows that hairs found at the scene of the crime were microscopically consistent with those of defendant and could have originated from the defendant. *See State v. Pratt*, 306 N.C. 673, 678-79, 295 S.E. 2d 462, 466 (1982) (expert testimony that hairs taken from the scene of the crime were microscopically consistent with those of defendant and could have come from defendant satisfied accepted legal standard for relevancy and was admissible, notwithstanding objection that because agent could not positively identify defendant from hair comparison, testimony was inadmissible). Additionally, a bloodhound specially trained in tracking human beings led a path from the front of the victim's house to the culvert where shoe prints were found and then to the trailer where the defendant was staying. The shoe prints found in the sand by the culvert and in the dust on

the hardwood floor in the victim's bedroom matched the treads of the defendant's shoes. *See Pratt*, 306 N.C. at 678, 295 S.E. 2d at 466 (footprint evidence taken within hours of commission of crime admissible as some evidence of perpetrator's identity).

Notwithstanding the fact there is no direct evidence, this evidence when taken in the light most favorable to the State is sufficient to give rise to a reasonable inference of defendant's guilt. *Jones*, 303 N.C. at 504, 279 S.E. 2d at 838. Accordingly, the court acted properly in denying defendant's motion to dismiss these two charges.

IV

[5]   Defendant's next assignment of error is the trial court's denial of his motion to dismiss the charge of common-law robbery based on insufficiency of the evidence.

Common-law robbery is "the taking and carrying away [of] personal property of another from his person or presence without his consent by violence or by putting him in fear and with the intent to deprive him of its use permanently, the taker knowing that he was not entitled to take it." *State v. McCullough*, 79 N.C. App. 541, 544, 340 S.E. 2d 132, 135, *disc. rev. denied*, 316 N.C. 556, 344 S.E. 2d 13 (1986). The defendant specifically contends there was insufficient evidence that any money was taken by the defendant or anyone else and insufficient evidence the money allegedly stolen was taken from the person or presence of the alleged victim.

The victim testified that when she went to bed on 30 May she had a ten dollar bill in a brown envelope with her name on it and that the envelope was inside her bra that was hanging on the chair in her bedroom. The chair was two or three feet from her bed. The perpetrator asked the victim did she have any money and she replied no. The victim testified she knew the defendant had gotten the ten dollars because she heard him "a 'rambling around in there." The bra and the brown envelope with the victim's name on it were found in the culvert near the defendant's trailer. The ten dollar bill was not inside the envelope. As stated above, shoe prints matching those found in the victim's bedroom and matching the treads on defendant's shoes were found near the culvert. We conclude this evidence is sufficient to give rise to a reasonable inference that defendant took and carried away the ten dollar bill. *See Jones*, 303 N.C. at 504, 279 S.E. 2d at 838 (evidence is sufficient

to withstand a motion to dismiss if it gives rise to a reasonable inference of defendant's guilt based on the circumstances).

There is likewise sufficient evidence the money was taken from the presence of the victim. "The word 'presence' must be interpreted broadly," *State v. Clemmons*, 35 N.C. App. 192, 196, 241 S.E. 2d 116, 118-19, *disc. rev. denied*, 294 N.C. 737, 244 S.E. 2d 155 (1978), with due consideration given to the element of the crime that requires the property to be taken "by violence or by putting him [the victim] in fear." *McCullough*, 79 N.C. App. at 544, 340 S.E. 2d at 135; *see Clemmons*, 35 N.C. App. at 196, 241 S.E. 2d at 119 ("presence" in the statutory definition of "robbery with firearms" "must be interpreted . . . with due consideration to the main element of the crime—intimidation or force by the threatened use of firearms"); *State v. Stewart*, 255 N.C. 571, 572, 122 S.E. 2d 355, 356 (1961) (robbery with firearms creates no new offense but provides for more severe punishment if firearms are used in a robbery). Here, the taking of money from the chair near the victim's bed occurred after the defendant had forced the victim to have vaginal and anal intercourse, forced her to perform fellatio, threatened to kill her, threatened to cut off her breast, and had hit her several times. This evidence is sufficient to show a taking from the presence of the victim through violence or by putting her in fear. Accordingly, this assignment of error is without merit.

V

[6] The defendant next contends the trial court erred by imposing a sentence in excess of the presumptive sentence for first-degree burglary. Defendant was sentenced to an active term of imprisonment for fifty years, which is in excess of the presumptive term of fourteen years. N.C.G.S. Sec. 14-52 (1986) (a person convicted of first-degree burglary shall receive a sentence of at least fourteen years). The trial judge found two aggravating factors to justify the sentence: (1) the defendant had a prior conviction or convictions for criminal offenses punishable by more than 60 days confinement, N.C.G.S. Sec. 15A-1340.4(1)(o), and (2) the victim, Mrs. Isenhour, who is a resident of and was in the dwelling house at the time of the burglary, was very old. N.C.G.S. Sec. 15A-1340.4(1)(j).

The defendant concedes the trial judge was proper in finding an aggravating factor concerning defendant's prior record. The defendant bases his assignment of error instead on his assertion that for age to be an aggravating factor "there must be a showing

STATE v. STYLES

[93 N.C. App. 596 (1989)]

that the victim's aged condition was a factor in the crime being committed or that the harm was worsened because of that fact." Defendant argues that Mrs. Isenhour, age 92, was asleep the entire time the burglary was going on, was not awakened and did not know anything about the burglary at the time it was committed. Therefore, he contends Mrs. Isenhour's aged condition was not a factor in the crime nor was the harm worsened because of her old age.

The underlying purpose of N.C.G.S. Sec. 15A-1340.4(a)(1)(j) is to "discourage wrongdoers from taking advantage of a victim because of the victim's young or old age or infirmity." *State v. Thompson*, 318 N.C. 395, 398, 348 S.E. 2d 798, 800 (1986) (citations omitted).

> There are at least two ways in which a defendant may take advantage of the age of his victim. First, he may "target" the victim because of the victim's age, knowing that his chances of success are greater where the victim is very young or very old. Or the defendant may take advantage of the victim's age during the actual commission of a crime against the person of the victim, or in the victim's presence, knowing that the victim, by reason of age, is unlikely to effectively intervene or defend himself.

*Id.* Vulnerability is the concern addressed by this aggravating factor. *State v. Wheeler*, 70 N.C. App. 191, 197, 319 S.E. 2d 631, 635, *disc. rev. denied*, 312 N.C. 624, 323 S.E. 2d 925 (1984), *cert. denied*, 316 N.C. 201, 341 S.E. 2d 583 (1986). A victim's age causes the victim to be more vulnerable where "age impedes a victim from fleeing, fending off attack, recovering from its effects, or otherwise avoiding being victimized." *State v. Hines*, 314 N.C. 522, 525, 335 S.E. 2d 6, 8 (1985).

The State is correct in arguing that old age can be an appropriate aggravating factor in the crime of burglary. In *Thompson*, a case in which the defendant tied the victim up before taking money and personal property, a finding that old age was an aggravating factor in burglary was upheld by our Supreme Court. *Id.* at 396, 400, 348 S.E. 2d at 799, 801. In that case there was evidence that defendant was aware the victim was an "old lady" before he broke into her house and evidence that defendant was aware of the victim's old age during the actual commission of the crime. *Id.* at 399, 348 S.E. 2d at 801. The Court concluded that the

victim's old age impeded her from fleeing or defending herself or her property. *Id.*

Here, the finding that old age was an aggravating factor of burglary was inappropriate. There is no evidence tending to show Mrs. Isenhour's home was targeted for burglary because of her old age. In fact, there is no evidence at all that defendant knew the age of the occupants of the house before he broke into it. Furthermore, there is no evidence in the record that Mrs. Isenhour, because of her old age, was more vulnerable to having her home burglarized than anyone else, or that she had a more difficult time recovering from the effects of the crime. Mrs. Isenhour was not taken advantage of during the actual commission of the crime as there was evidence she was asleep during the entire burglary. We therefore conclude that the victim's old age was improperly found as an aggravating factor for the crime of first-degree burglary. Accordingly, we remand for resentencing as to the crime of first-degree burglary. *See State v. Daniel*, 319 N.C. 308, 315, 354 S.E. 2d 216, 220 (1987) (defendant given new sentencing hearing where court imposed a sentence in excess of presumptive term and failed to properly find a statutory mitigating circumstance).

VI

[7] Defendant next argues the court denied defendant "an opportunity for a fair and impartial trial by understating the elements of the offenses for which the defendant was charged during the trial court's opening remarks to the jury panel before trial."

N.C.G.S. Sec. 15A-1221(a)(2) provides that before trial, the trial judge must inform the prospective jurors of the case in accordance with N.C.G.S. Sec. 15A-1213. N.C.G.S. Sec. 15A-1213 provides as follows:

> Prior to selection of jurors, the judge must identify the parties and their counsel and briefly inform the prospective jurors, as to each defendant, of the charge, the date of the alleged offense, the name of any victim alleged in the pleading, the defendant's plea to the charge, and any affirmative defense . . . . [T]he judge may not read the pleadings to the jury.

*Id.*

Defendant alleges that in informing the jury the trial judge failed to present every element of each crime charged and there-

fore the jury was misinformed as to the nature of the charges and what the State must prove in order to support convictions. A careful reading of the transcript of the judge's pre-trial remarks reveals that the judge complied with N.C.G.S. Sec. 15A-1213. The judge began his remarks by informing the jury of the five charges against defendant and how defendant pled to each one of them. The judge identified the parties and their counsel and then proceeded to relate to the jury the date of the alleged offenses and the name of the victim of each alleged offense where applicable. The judge then instructed the jury on the presumption of innocence and the burden of proof. The trial judge did not state every element the State would be required to prove during trial. This, however, is not error as defendant contends. N.C.G.S. Sec. 15A-1213 does not require the judge to inform the jury of the elements of each crime. Such instruction is required during the final jury instructions. R. Price, *North Carolina Criminal Trial Practice* Sec. 24-1, p. 504 (1985). N.C.G.S. Sec. 15A-1213 only requires the jury be informed of the charges pending against the defendant, not the elements thereof. Here, as the trial judge complied with the statute, we find no error.

## VII

[8] The defendant next contends the trial judge erred in allowing the district attorney "to exceed the bounds of propriety in his closing argument to the jury and not following said impropriety with an admonishment to the jury or correcting instructions."

The following statements made by the district attorney in his closing are those defendant refers to as exceeding the "bounds of propriety":

Let me tell you right now I don't want you to convict because I might scream and shout. One reason is because I've got a sore throat, and another is because of this Courtroom, and, third, it makes me just a little bit mad because this woman went through this in this county; but I want you to convict this man right here in this Courtroom for doing those things to Ms. Jolly on that, on the evidence . . .

. . . and if that is not enough to convict somebody in this county, then you tell me it is not enough to convict somebody in this county. . . .

There is no doubt in anybody's mind who did this, but I tell you one thing, when you go back to that Jury Room and talk about this case after you hear the law the Judge has given you, if there is a doubt in your mind, it is not reasonable . . .

Give her [Ms. Jolly] some justice for her seventy-four years on this earth. . . .

I'm asking you to convict that man on the facts, not because I might have screamed a time or two in my argument, but because the facts are there . . .

Defendant contends these statements violated the statutory limitations on jury argument set out by N.C.G.S. Sec. 15A-1230(a) because they express the district attorney's personal belief and opinions. N.C.G.S. Sec. 15A-1230(a) provides in pertinent part:

During a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice.

*Id.*

The defendant is required to object to improper jury argument and failure to do so ordinarily constitutes a waiver. *State v. Hickey*, 317 N.C. 457, 472, 346 S.E. 2d 646, 656 (1986). Here, the defendant failed to object and therefore our review is limited to whether the district attorney's argument was so grossly improper as to require the trial court to intervene *ex mero motu* and instruct the jury to ignore the district attorney's comments. *Id.* at 473, 346 S.E. 2d at 656; *State v. Jones*, 317 N.C. 487, 500, 346 S.E. 2d 657, 664-65 (1986). We conclude the district attorney's comments "do not rise to the level of gross impropriety" and therefore find no error. *Hickey*, 317 N.C. at 473, 346 S.E. 2d at 656.

## VIII

[9] The defendant similarly argues that the trial court erred in failing to intervene *ex mero motu* to admonish the jury or provide any correcting instructions for a comment the district attorney made during closing argument which defendant contends was "at least a veiled reference to the failure of the defendant to testify."

Although the defendant failed to object at trial, he contends the following comment is so grossly improper that the trial judge should have intervened: "Now, you compare those characteristics I just read out to this man seated right here [referring to defendant] and compare them to Mr. Workman, who you got to see up there; to hear from." The district attorney made this comment after making some points about the characteristics of the perpetrator. Mr. Workman was a State witness and on cross-examination of him, the defendant attempted to show that he could have been the perpetrator. As stated in Section VII, failure to object to the district attorney's argument at trial ordinarily constitutes a waiver. *See Hickey*, 317 N.C. at 472, 346 S.E. 2d at 656. However, in the absence of an objection, the trial judge is required to intervene *ex mero motu* at trial for argument that is grossly improper. *State v. Young*, 317 N.C. 396, 415, 346 S.E. 2d 626, 637 (1986). Failure of a judge to intervene under these circumstances constitutes reversible error.

Section 8-54 provides that failure of a defendant to testify does not create any presumption against him. N.C.G.S. Sec. 8-54 (1986). This statute has been interpreted as "prohibiting the prosecution, the defense, or the trial judge from commenting upon the defendant's failure to testify." *State v. Randolph*, 312 N.C. 198, 206, 321 S.E. 2d 864, 869 (1984). The purpose of "the rule prohibiting comment on the failure to testify is that *extended reference* by the court or counsel concerning this would nullify the policy that the failure to testify should not create a presumption against the defendant." *Id.* (emphasis added). Here, any reference by the district attorney of defendant's failure to testify is at the most "a veiled reference," "so brief and indirect as to make improbable any contention that the jury inferred guilt from the failure of the defendant[ ] to testify." *Id.* As there is no gross impropriety here, we find the trial judge did not err in failing to intervene *ex mero motu*. Furthermore, whatever error there may have been was cured by the judge's instructions to the jury. *See State v. Wilson*, 311 N.C. 117, 130, 316 S.E. 2d 46, 55 (1984). The judge specifically instructed the jury that the defendant had the privilege of not testifying and that his decision created no presumption against him. The trial judge further instructed the jury that defendant's silence was not to influence them in any way. This assignment of error is without merit.

IX

[10] Defendant next contends the trial court erred in "failing to properly admonish the jury or provide correcting instructions after

a law enforcement officer testifying for the State made a reference to the defendant's prior criminal record."

During his testimony for the State, S.B.I. Agent Bueker related to the jury a statement he took from the defendant on the morning after the alleged offense occurred. In relating this statement, Agent Bueker told the jury "Mr. Styles stated he had been in trouble with the law previously for breaking or entering." At that point, the defendant objected and the objection was sustained. The trial judge instructed the jury to "disregard that, ladies and gentlemen." The defendant contends the admonishment was insufficient under the circumstances and had the effect of denying defendant a fair and impartial trial. Defendant asserts it was error for the judge to fail to instruct the jury that a prior conviction cannot be used as evidence of defendant's guilt in the present case. However, as the defendant did not specifically request such a curative instruction, the issue is deemed waived on appeal. *State v. Griffin*, 57 N.C. App. 684, 687, 292 S.E. 2d 156, 158, *cert. denied*, 306 N.C. 560, 295 S.E. 2d 477 (1982). Furthermore, as there is nothing in the record that indicates the jury disregarded the court's timely curative instruction to "disregard that, ladies and gentlemen," it is presumed the impropriety was cured. *State v. Rozier*, 69 N.C. App. 38, 59, 316 S.E. 2d 893, 906, *cert. denied*, 312 N.C. 88, 321 S.E. 2d 907 (1984). This assignment of error is overruled.

X

[11]  Defendant finally argues that the trial court erred in failing to sustain his objection to the introduction into evidence of State's Exhibits Nos. 62 and 63 which were photographs of the defendant taken on 3 June 1987 at the time of his arrest. This argument is without merit.

The photographs were identified by Chief Deputy Ray Warren as those made by him of defendant with a Polaroid camera on the day of his arrest. Warren testified the photographs were a fair and accurate representation of what defendant looked like on the day defendant was arrested and that the photographs could be used by Warren to illustrate his testimony about the appearance of the defendant. Defendant contends these photographs are irrelevant because the victim never identified him as the perpetrator. We disagree.

As the victim testified that the perpetrator had a moustache and was not clean shaven but had no beard, we find it relevant

whether defendant had a moustache or a heavy beard at the time he was arrested. Assuming *arguendo* the admission of the photographs was error, the defendant has not shown "a different result would have been reached at the trial" had such error not occurred. N.C.G.S. Sec. 15A-1443 (1988). Accordingly, we find no merit to this assignment of error.

We find no error in the trial, but we remand the first-degree burglary conviction for a new sentencing hearing consistent with this opinion.

Remanded.

Judge PHILLIPS concurs in the result.

Judge COZORT concurs in part and dissents in part.

Judge COZORT concurring in part and dissenting in part.

I concur with all of the majority opinion, except for that portion which remands the case for resentencing as to the crime of first-degree burglary.

In my opinion the trial court properly found as an aggravating factor that the victim, Mrs. Isenhour, was very old. I believe the majority has misread the standard as established by the Supreme Court opinions. In *State v. Hines*, 314 N.C. 522, 335 S.E. 2d 6 (1985), the Supreme Court remanded for resentencing in a burglary case where the aggravating factor of the victim being very old was based solely on evidence that the victim was 62 years old. The Supreme Court said:

> Stewart's age, by itself, does not demonstrate that he was more vulnerable to the assault at issue in this case than a younger person would have been. Many sixty-two-year-old men lead robust, active lives. Paul Stewart was a brickmason until the five years preceding his death. In those years he maintained a lively business selling drinks. He occasionally went fishing. There was no evidence he was in poor health or disabled. . . . In short, we do not believe the mere fact that Paul Stewart was sixty-two years old would support finding in this case as an aggravating factor that he was "very old."

*Id.* at 526, 335 S.E. 2d at 8. The Supreme Court further stated:

**STATE v. STYLES**

[93 N.C. App. 596 (1989)]

In cases . . . involving victims near the *beginning or end of the age spectrum*, the prosecution may establish vulnerability merely by relating the victim's age and the crime committed.

*Id.* (emphasis supplied).

The facts below make this case obviously distinguishable from *Hines*. There is quite a difference between a 62-year-old healthy man and a 92-year-old invalid woman.

Furthermore, in *State v. Thompson*, 318 N.C. 395, 348 S.E. 2d 798 (1986), the Supreme Court stated:

Neither *Hines* nor *Barts* [*State v. Barts*, 316 N.C. 666, 343 S.E. 2d 828 (1986)] was meant to restrict the aggravation of crimes to those where the victim was targeted because of age. Where the age of the victim is taken advantage of by the defendant during the commission of the crime — by whatever means — the defendant's culpability is increased. It is this increased culpability that leads to a more severe punishment.

*Id.* at 398-99, 348 S.E. 2d at 801.

In the case below, the victim to which the trial court referred in the aggravating factor was a 92-year-old invalid. Common sense dictates that she was more vulnerable than an ordinary, younger victim would have been and that she was more easily taken advantage of by defendant during the commission of the crime. A court of law is not required to ignore that which is common knowledge or common sense.

I find no error in either the trial or the sentencing of defendant.